## W. F. GRIFFIN v. STATE.

No. A-8761. June 14, 1935.
Rehearing Denied June 28, 1935.
(46 Pac. [2d] 382.)

J. P. Wishard and Billups & Billups, for plaintiff in error.

J. Berry King, Atty. Gen., Smith C. Matson, Asst. Atty. Gen., and T. R. Fisher, Co. Atty., for the State.

DOYLE, J. Appellant, Dr. W. F. Griffin, was convicted in the district court of Blaine county upon an information charging that in said county on the 31st day of December, 1932, he did commit the crime of unlawful possession of narcotic drugs in manner and form as follows:

"That is to say, the defendant in the county and state aforesaid and on or about the date aforesaid, then and there being, did then and there willfully, wrongfully, unlawfully and feloniously and without authority of law, have in his possession and under his control a certain quantity of narcotic drugs, to wit: approximately 4,746 half-grain tablets of morphine sulphate, and that the defendant, Dr. W. F. Griffin, a regularly licensed physician, did with the unlawful and felonious intent to violate the narcotic law of the State of Oklahoma, contrary etc."

Upon the trial the jury returned their verdict finding "the defendant, W. F. Griffin, guilty of the crime of unlawful possession of narcotic drugs but cannot agree on the punishment to be assessed."

Motions for a new trial and in arrest of judgment were duly filed and overruled. The court rendered judgment on the verdict and sentenced the defendant to confinement in the state penitentiary for a term of four years and to pay a fine of $1,000 and costs.

The record shows that the defendant, Dr. W. F. Griffin, was a practicing physician in Watonga, that on December 31, 1932, he was arrested by the service of a war-

rant of arrest at his office by the sheriff of Blaine county, and 4,746 half grain tablets of morphine were taken from his possession. On December 30, 1932, the defendant had been arrested by federal officers and was later charged with illegal sales of narcotics in the federal court. On application of the defendant, the case on September 18, 1933, was continued on account of illness of the defendant and thereafter on October 24th the case was stricken from the trial assignment, thereafter on November 3d the case was set for trial November 28, 1933. When the case was called for trial, the defendant filed a motion to strike the case from the assignment on the ground that the court was without jurisdiction to try the case before the case pending against him in the federal court for illegal sale of narcotics and set for trial at Oklahoma City January 8, 1934, had been disposed of, on the theory that he was being prosecuted in the state court for the same offense. The motion to strike was overruled. In the course of the trial the defendant objected to the introduction of state's Exhibit A, the same being the morphine taken from the possession of the defendant when he was placed under arrest, on the ground that the same was taken without a search warrant. The court after inquiring into the circumstances of the procuring of the evidence, in the absence of the jury, overruled the objection. Henry J. Law, sheriff, Merrill Baskins, under sheriff, and Sam Spainhower, Watonga chief of police, were present at the arrest and testified to substantially the same facts, that the morphine was taken from the defendant's possession at the time of his arrest and incidental to it.

The lawfulness of his arrest was never questioned.

Taylor Rogers, state chemist, testified and identified the contents of the bottles that were taken from the defendant on December 31, 1932, as being morphine sulphate.

When the state rested, the defendant demurred to the evidence on the ground that the court was without jurisdiction to hear and determine the case for the reason that prior to the time in which the complaint was filed in the case the United States District Court for the Western District of Oklahoma had acquired jurisdiction of the person of the defendant in a case growing out of the same transaction for which the defendant is prosecuted here; that all the evidence is based on state's Exhibit A, which is a quantity of morphine taken from the defendant's possession when he was under arrest, and at the command of the sheriff, the defendant delivered the same to the sheriff without a search warrant; and that the evidence is insufficient to show the commission of any offense against the laws of the state. The demurrer to the evidence was by the court overruled.

On the part of the defendant there was testimony of several medical experts as to what constituted the recognized practice of the medical profession in the use of morphine.

A number of witnesses qualified as character witnesses and further testified that the defendant's reputation in the community as to being an upright law-abiding citizen was good.

As a witness in his own behalf, the defendant testified to the effect that the quantity of morphine he had on hand was necessary in his treatment of certain addicts that he named, therefore his possession was for a lawful purpose. But on cross-examination he denied selling morphine in quantities on certain named dates to these same addicts. He then identified his only narcotic dispensing record, which was made by his wife at his direction, showing the number of persons for whom he furnished mor-

phine and the quantities for each, which exceeded the amount he had testified to as necessary in their treatment.

The state, in order to show that the defendant did not have the morphine in his possession for strictly lawful purposes, presented evidence in the form of the defendant's own records, to show that the defendant had acquired 48,-000 one-half grain tablets of morphine in the two-year period preceding the arrest, as shown by Exhibit B and that his record of dispensing together with the amount on hand accounts for only 6,827 grains. Evidence was also produced, in rebuttal, of certain illegal sales made to addicts beginning the day before his arrest and dating back some three months, for the purpose of showing his intent, plan, or scheme to make illegal sales in connection with his possession of the 4,746 one-half grain tablets of morphine found in his possession. No record was made of these illegal sales on his narcotic dispensing record, nor is there any record showing how 17,172 grains of morphine were disposed of, that his own records show he purchased in the two years preceding his arrest.

While the defendant claimed that he had this large quantity for the treatment of certain addicts, yet he did not designate on his order forms that this excessive quantity was to be used for certain habitual users of morphine or addicts.

At the close of all of the evidence, the defendant interposed a demurrer to the same on the following grounds:

First, that the exhibits offered in the case on the part of the state were all obtained from the defendant while he was under arrest and without a search warrant and without due process of law and that the same were inadmissible in the case and without such exhibits the state had failed to make out a case against the defendant.

Second, that the evidence shows that the United States had acquired jurisdiction of the person of the defendant prior to that of the state and that said charge is now pending and is set for trial at Oklahoma City, January 8, 1934, and that the state is without jurisdiction to proceed in the case while said action is pending in said United States District Court.

Demurrer was overruled, exception reserved.

In the presentation of this case a number of errors are assigned upon the adverse ruling of the court to strike the case from the assignment for trial; upon the overruling of the demurrers to the evidence; and upon the overruling of the motions for new trial and in arrest of judgment, which may be summarized as follows: That the trial court was without jurisdiction to try the defendant on the information in this case prior to the disposition of the federal charge for unlawful sale of narcotics pending in the United States Court for the Western District of Oklahoma.

The question presented has been passed upon by this court in the case of Neff v. State, 39 Okla. Cr. 133, 264 Pac. 649. Neff was convicted of manslaughter, the information charging that in Oklahoma county, November 27, 1925, the offense was committed. The defendant, Neff, the next day, November 28th, appeared before the federal court at Pawhuska and entered a plea of guilty on a charge of violating the Federal Prohibition Law (27 USCA) and was sentenced to serve a term of eighteen months imprisonment in the federal penitentiary at Leavenworth, and on the same day commitment issued.

The Attorney General for the state presented on January 12, 1926, a petition for writ of "habeas corpus ad

prosequendum" to this court, on which the writ issued, and in response to the same the defendant, Neff, was surrendered by the federal authorities to the sheriff of Oklahoma county, this with the consent of the Attorney General of the United States. His trial resulted in a conviction, and sentences of imprisonment in the state penitentiary for a term of twelve years. He was then returned to the federal authorities. In the Neff Case it was contended that the state courts had no jurisdiction of him, and especially the district court of Oklahoma county was without jurisdiction for the reason that he was a federal prisoner.

In support of his contention the defendant cites and quotes from the opinions in the cases of Ponzi v. Fessenden, 258 U. S. 254, 42 S. Ct. 309, 66 L. Ed. 607, 22 A. L. R. 879, and Kerker v. Superior Court, 38 Okla. Cr. 111, 259 Pac. 146.

In the Ponzi Case the following question was certified to the Supreme Court of the United States for decision:

"May a prisoner, with the consent of the Attorney General, while serving a sentence imposed by a district court of the United States, be lawfully taken on a writ of habeas corpus, directed to the master of the House of Correction, who, as federal agent, under a mittimus issued out of said District Court, has custody of such prisoner, into a state court, in the custody of said master and there put to trial upon indictments there pending against him?"

Mr. Chief Justice Taft in the opinion says:

"One accused of crime has a right to a full and fair trial according to the law of the government whose sovereignty he is alleged to have offended, but he has no more than that. He should not be permitted to use the machinery of one sovereignty to obstruct his trial in the courts of the other, unless the necessary operation of such machinery prevents his having a fair trial. He may not com-

plain if one sovereignty waives its strict right to exclusive custody of him for vindication of its laws in order that the other may also subject him to conviction of crime against it. In re Andrews (D. C.) 236 F. 300; United States v. Marrin (D. C.) 227 F. 314. Such a waiver is a matter that addresses itself solely to the discretion of the sovereignty making it and of its representatives with power to grant it.

"One accused of crime, of course, cannot be in two places at the same time. He is entitled to be present at every stage of the trial of himself in each jurisdiction with full opportunity for defense. Frank v. Mangum, 237 U. S. 309, 341 S. Ct. 582, 59 L. Ed. 969; Lewis v. United States, 146 U. S. 370, 13 S. Ct. 136, 36 L. Ed. 1011. If that is accorded him, he cannot complain. The fact that he may have committed two crimes gives him no immunity from prosecution of either."

In conclusion, the Chief Justice says:

"But it is argued that when the prisoner is produced in the superior court, he is still in the custody and jurisdiction of the United States, and that the state court cannot try one not within its jurisdiction. This is a refinement which if entertained would merely obstruct justice. The prisoner when produced in the superior court in compliance with its writ is personally present. He has full opportunity to make his defense exactly as if he were brought before the court by its own officer. State v. Wilson, 38 Conn. 126, 136. The trial court is given all the jurisdiction needed to try and hear him by the consent of the United States, which only insists on his being kept safely from escape or from danger under the eye and control of its officer. This arrangement of comity between the two governments works in no way to the prejudice of the prisoner or of either sovereignty.

"The question must be answered in the affirmative."

In the case of Kerker v. Superior Court, cited above, this court in the syllabus said:

"The pendency of an action and the holding of a defendant for trial in one court of the state does not preclude the state from instituting another prosecution for the same offense in a court of concurrent jurisdiction. A plea in abatement or a plea in bar because of the pendency of the prior action will not lie in such latter action."

Upon the record in this case there is no question of double jeopardy or double prosecution for the same offense presented; the fact that a defendant is charged in a federal court for some offense certainly cannot in any way prevent the state from trying the same defendant in a state court on another and different offense, while the federal case is pending against him. Yet that is what the defendant contends, even though no rule of comity is being violated in any manner. It seems the defendant himself wanted to be the one to determine where he should be tried first.

It appears from the record that at no time in either the state or the federal case was the defendant ever incarcerated, nor had there been an objection to his trial in the state court by the federal authorities. Had the defendant been held in custody by the federal authorities at the time his case in the state court was called for trial, then it would be true that the state could not take him from the federal authorities without their permission.

We remark here that the provisions of the Harrison Narcotic Act, December 17, 1914, as amended (26 USCA §§ 211, 691-707), exacting a license as a condition for the sale, dispensing, or distribution of drugs are not an exercise of the police power, but are for the purpose of revenue, and such license is a mere form of imposing a tax, and implies nothing more than that the licensee shall not be subject to the penalties of the act.

In the case of La Forge v State, 28 Okla. Cr. 37, 228 Pac. 1111, 1112, this court construing section 2290, C. O. S. 1921 (section 2679, Okla. St. 1931), providing:

"Whenever it appears upon the trial that the accused has already been acquitted or convicted upon any criminal prosecution under the laws of another state, government or country, founded upon the act or omission in respect to which he is upon trial, this is a sufficient defense," held, "By virtue of this statute, where one has been punished for the illegal possession of intoxicating liquor under the federal law, he cannot be again punished for the illegal possession of the same whisky, at the same time and place, in violation of the laws of this state."

Our statute above quoted is susceptible of but one construction. And a conviction in a federal court for the same act as charged in a prosecution in a state court is a conviction under the laws of another "government" within the meaning of the statute; and by virtue of the statute alone such conviction is a complete defense to a prosecution for the same act or omission in the courts of this state.

It follows from what has been said that the court did not err in overruling the defendant's demurrer to the jurisdiction of the court to try the case and the contention made that the court was without jurisdiction to try the case is, we think, destitute of merit.

Complaint is also made that it was error to admit in evidence state's Exhibit A which is a quantity of morphine seized without a search warrant at the time of the defendant's arrest. The same question has been several times presented and passed upon by this court.

In the case of Davis v. State, 30 Okla. Cr. 61, 234 Pac. 787, the second syllabus reads:

"There is a well-defined distinction between the right to seize contraband goods and papers under authority of a

warrant of arrest and under authority of a search warrant. Under a warrant of arrest a seizure may follow as an incident to the arrest; a 'search warrant' is a kind of writ of discovery, and the arrest of the offender, if any, follows the discovery as an incident ancillary to it."

In the opinion it is said:

"The immunity guaranteed by the provisions of the Bill of Rights (Const. art. 2, § 30) against unreasonable searches and seizures does not extend to the tools, implements, and papers found on the person or in the possession of the person lawfully placed under arrest, where such tools, implements, or papers have been or manifestly may be used to perpetrate the crime charged. This provision was designed to protect persons from unwarranted invasions of the privacy of their persons and effects on mere suspicion without probable cause; but where one is legally arrested for a crime, upon authority of a valid warrant for his arrest, the warrant of arrest itself implies probable cause. Under such circumstances, it is not incumbent upon the officer who makes the arrest to procure a search warrant in order to search for the means or instruments of committing the crime, found in the possession of the person arrested."

In Berg v. State, 29 Okla. Cr. 112, 233 Pac. 497, 502, it is said:

"This court holds that property taken from the person of any one by an unlawful search of his person is not admissible in evidence against him. But where an officer makes a lawful arrest, he may take from the person arrested any firearms, counterfeit money, burglar tools, or other papers or documents, or other matter to be used with criminal intent, and that such things so taken may be used as evidence against the person arrested."

In Washington v. State, 37 Okla. Cr. 415, 259 Pac. 150, 151, it is said:

"We deem it sufficient to say that only unreasonable searches and seizures are prohibited. The right without

a search warrant contemporaneously to search persons lawfully arrested while committing crime, and to search the place where the arrest is made in order to find and seize things connected with the crime as its fruits or as the means by which it was committed, or which may be of use as evidence at the trial, is not to be doubted."

Upon the trial the defendant, as a witness in his own behalf, testified as to his possession of the morphine, introduced in evidence, against the admission of which he now complains.

Several other errors are assigned and argued, but after careful examination we find all of them so lacking in substantial merit that we cannot feel justified to extend the opinion by their discussion.

Upon consideration of the whole case we are of the opinion that the defendant was fairly tried, the issues fairly submitted, and no error requiring a reversal is shown.

The judgment appealed from is therefore affirmed.

DAVENPORT, P. J., concurring. EDWARDS, J., absent.