JOE NEWTON v. STATE.

No. A-9005.  Jan. 26, 1937.
(71 Pac. [2d] 122.)

238

Baxter Taylor, W. H. C. Taylor, and Edwards & Robinson, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Sam H. Lattimore, Asst. Atty. Gen., for the State.

DOYLE, J.   This appeal is from a judgment of conviction pronounced and entered by the district court of Garfield county in pursuance of the verdict of a jury finding Joe Newton guilty as charged in the information and he was sentenced to imprisonment in the state penitentiary for a term of 20 years.

Appellant, Joe Newton, and his brother, Willis, were jointly charged in the preliminary complaint with the crime of robbery with firearms, alleged to have been committed in Grant county on the 14th day of April, 1932.

Upon his separate trial Willis Newton was convicted in the district court of Grant county and was sentenced to serve a term of 20 years in the state penitentiary, which conviction was on appeal affirmed by this court.   See Newton v. State, 56 Okla. Cr. 391, 40 Pac. (2d) 688.

The information in this case filed March 7, 1935, in the district court of Grant county charges the crime of robbery with firearms.   On appellant's application, the court granted a change of venue to Garfield county.

The evidence shows that on the night of April 13, 1932, the First National Bank of Medford was robbed by two men who entered by prying open a window.   The steel safe, 4 inches in thickness, was burned through by an acetylene cutting torch and $4,400 in money taken from the safe, also bonds and travelers' checks.   The evidence further discloses that about 1 o'clock that morning Ed Heiland, who was night watchman for the city of Medford, whose duty it was to guard the bank and other business houses, was in a cafe about a block from the bank. The proprietor and another person were present.   Heiland

had just ordered a cup of coffee when Willis Newton came in holding a pistol, ordered the three men in the cafe to lie on the floor, face down with their hands stretched forward, he then tied the hands of all and tied them together. He took from Heiland a pistol, and forced them to go with him to the bank where he was joined by a masked man, holding a double-barrel shotgun; the prisoners were then held under guard near the bank building. Willis Newton then went to the telephone exchange, disabled it, and took in custody all persons there, forcing them to go with him. By using one of the telephone men as a decoy, he captured under sheriff Hamilton, and took him, with his car, to the bank, then placed seven of these captives in Hamilton's car. Willis Newton then drove a car equipped with an acetylene torch, tank, hose, and material for steel cutting to the sidewalk alongside the bank and a window was forced open. The other man positively identified by five witnesses as appellant, Joe Newton, then proceeded to hook up the acetylene torch equipment, entered the bank, and cut into the safe. During the operation several persons passing were stopped and taken into custody by Willis Newton who was guarding the prisoners, so that, by the time the operation was completed, about 20 persons were held captive, some of them in their cars. These prisoners included two men driving bread vans and a man driving a milk delivery. One young man was pressed into service to aid in the work inside the bank and two others were for a time kept inside the bank. The job was finished shortly after 5 o'clock that morning. The Newtons then entered their car, Joe Newton at the wheel, drove north on Main street. On November 18, 1932, Willis Newton and appellant, Joe Newton, were arrested at Chandler. The officers found in their car a double barrel shotgun, three pistols, two bullet proof vests, an

acetylene outfit, with tank, hose, blow torch, and goggles. Appellant, Joe Newton, was delivered to Texas officers. Willis Newton claimed the acetylene outfit, and it with the car was turned over to him by the Chandler officers. Willis Newton was arrested at Tulsa, November 27, 1932. Three alibi witnesses testified that on April 13, 1932, defendant, Joe Newton, was at San Antonio, Tex., and the next morning at Uvalde, Tex. Appellant did not take the witness stand.

The first objection urged is that the information is insufficient to charge the crime of robbery with firearms.

The information was sufficient and for the reasons stated in opinion in the case of Newton v. State, supra, the demurrer thereto was properly overruled.

Numerous other errors are assigned, most of which relate to rulings of the court upon the admission and exclusion of evidence; others on exceptions taken to certain instructions, alleged misconduct of the jury, and error in overruling the motion for a new trial. The defense was an alibi.

Complaint is made that the court erred in overruling the defendant's motion to suppress evidence obtained by the search of the car at Chandler and its admission in evidence was incompetent, prejudicial, and in violation of his constitutional rights, because the officers searching the car had no search warrant.

In the case of Griffin v. State, 57 Okla. Cr. 176, 46 Pac. (2d) 382, 383, this court held:

"The immunity guaranteed by section 30 of the Bill of Rights (Const. art. 2) against unlawful searches and seizures does not extend to the implements of crime, records, papers, or other things found on the person or in

the possession of the person lawfully placed under arrest, where such implements, records, papers, or other things have been or manifestly may be used to perpetrate the crime charged."

In the case of Crossmann v. State, 28 Okla. Cr. 198, 230 Pac. 291, it is said:

"A peace officer may arrest one on a well-founded suspicion for the commission of a felony, where a felony has in fact been committed, and the officer has reasonable grounds to believe that the person arrested was the perpetrator."

A peace officer has the right without a warrant to arrest a fugitive from justice. Davis v. State, 59 Okla. Cr. 26, 57 Pac. (2d) 634; Methvin v. State, 60 Okla. Cr. 1, 60 Pac. (2d) 1062.

It appears that appellant was at that time arrested as a fugitive from justice.

It follows that the objections made were properly overruled.

Arbie Beall testified that she lives at Medford; handed a picture marked defendant's exhibit A, she was asked: "Can you tell the jury whether or not you have ever seen the man whose picture you now hold?" Upon the state's objection the court excused the jury. Witness then testified in substance that on the night of April 13, 1932, between 10 and 11 o'clock she saw a man standing by a big car parked in front of the Medford post office and Johnson's drug store, that she lived over the drug store and was sitting at the window looking down on the street, the man had the hood of the car up. Mr. Ed Heiland came along and the man asked him for a flashlight; that she could not say for sure, but her judgment was the man she saw that night was the man in the picture.

Charles T. Warner, in the absence of the jury, testified that he lived at Turley, Okla., was a deputy United States Marshal in 1932. Identified defendant's exhibit A as a picture of John Blanther, a man he had shot and arrested in Delaware county on December 30, 1932, and that he talked to him in the jail at Vinita that day. He further testified: "I asked him how he was feeling and he said, 'I don't think I will make it through the day.' I said, 'Well, John, you haven't got any chance and why don't you come on and tell what jobs you have pulled so we can get this thing cleared up,'" and Blanther told him about robbing banks at Kinsley, Peru, and Sedan, Kan., and the bank at Coyle, Okla., and that about eight or nine months before he and another man had robbed the Medford bank, using an acetylene blow torch, and telling him where to find it. That as directed he went back to where the shooting occurred and near there found it. That Blanther was 6 feet and 1 inch tall and would weigh about 220 pounds. That on January 2, 1933, Blanther died as a result of the gunshot wound.

After hearing the arguments of counsel, the court sustained the objections interposed by the state. Thereupon the jury were recalled.

Chester Wood testified that he lives at Tulsa, was deputy sheriff of Osage county in 1932 and 1933, handed defendant's exhibit A and asked what it was, answered: "That is a picture of John Blanther, a bank robber that was killed." Asked: "Do you know whether or not John Blanther owned for several years prior to his death an efficient cutting torch?" Objection sustained. Mr. White: "We offer to prove that he had a cutting torch equipped and of a character that would break through these safes, and that witness had seen him and had arrested him with the same sort of equipment." Objection

sustained. Mr. White: "We would like to make the same offer of proof by this witness that we did by the witness Warner, out of the presence of the jury." Exceptions reserved.

In his motion for a new trial on the ground of newly discovered evidence, the defendant attached and made a part thereof an affidavit of the widow of John Blanther to the effect that about the last of April or 1st of May, 1932, she had opened a handbag brought by John Blanther to the state of Arizona, where she was staying, and had observed in this handbag a quantity of bills of various denominations, with paper bands around them having thereon the name of the First National Bank of Medford; that upon inquiry, John Blanther told her that he had a short while before that robbed that bank.

The learned counsel for appellant in their brief say:

"That the testimony of the officers was competent as was the circumstances of finding the acetylene outfit, and the exclusion of that evidence was error, and that supported by the evidence indicated by the affidavit of the widow of John Blanther, that the failure of the court to grant the motion for new trial was error. That therefore appellant is entitled to have this court order a new trial at which he may produce this evidence."

And further says:

"Our conclusion after an examination of the authorities is that no completely satisfying statement of the rule, either as to its liberality of admission or as to the proper restriction, in the kind of evidence admissible, has ever been made by the courts."

Citing and quoting from opinions in the following cases: Hines v. Commonwealth, 136 Va. 728, 117 S. E. 843, 35 A. L. R. 431; Satterwhite v. State, 77 Tex. Cr.

130, 177 S. W. 959; State v. Jenkins, 134 La. 185, 63 So. 869; State v. Scott, 117 Kan. 303, 235 Pac. 380; Commonwealth v. Murphy, 282 Mass. 593, 185 N. E. 486; People v. Mendez, 193 Cal. 39, 223 Pac. 65; also Wigmore on Ev., vol. 1 (2d Ed.) 139.

In Hines v. Com., supra, the Virginia, Supreme Court of Appeals held:

"Evidence of admission of guilt of a homicide by one possessing motive and opportunity to commit it is admissible upon trial of another for the crime."

In Blocker v. State, 55 Tex. Cr. 30, 114 S. W. 814, 131 Am. St. Rep. 772, it is held:

"In a homicide case, where the entire evidence is purely circumstantial, testimony that a third person has declared that he killed the deceased is admissible, his motive for the crime being as strong as that of the defendant." "

It is elementary law that the defendant in a criminal case may show that another person committed the crime charged, and that he had no participation in it. But such guilt of a third person must be shown by competent evidence.

In Factor v. State, 28 Okla. Cr. 78, 229 Pac. 154, 158, it is said:

"It is the well-settled rule in this state that a defendant who is being tried on a criminal charge is not entitled to introduce proof which has for its purpose the establishing before the jury the fact that some other person has confessed that he committed the crime, and that the defendant had nothing to do therewith, and was not concerned therewith. Dykes v. State, 11 Okla. Cr. 602, 150 Pac. 84; Williams v. State, 13 Okla. Cr. 189, 163 Pac. 279; Klein v. State, 15 Okla. Cr. 350, 176 Pac. 414; McNeal v. State, 15 Okla. Cr. 555, 179 Pac. 479."

In the case of Dykes v. State, 11 Okla. Cr. 602, 150 Pac. 84, this court held:

"A defendant, who is being tried on a criminal charge, is not entitled to introduce proof which has for its purpose the establishing before the jury the fact that some other person has confessed that he committed the crime, and that [he] the defendant had nothing to do therewith and was not concerned therein."

Citing and quoting from the opinion in Donnelly v. United States, 228 U. S. 243, 33 S. Ct. 449, 459, 57 L. Ed. 820, Ann. Cas. 1913E, 710, wherein Mr. Justice Pitney, speaking for the court, said:

"Hearsay evidence, with a few well-recognized exceptions, is excluded by courts that adhere to the principles of the common law. The chief grounds of its exclusion are, that the reported declaration (if in fact made) is made without the sanction of an oath, with no responsibility on the part of the declarant for error or falsification, without opportunity for the court, jury, or parties to observe the demeanor and temperament of the witness, and to search his motives and test his accuracy and veracity by cross-examination, these being most important safeguards of the truth, where a witness testifies in person, and as of his own knowledge; and, moreover, he who swears in court to the extrajudicial declaration does so (especially where the alleged declarant is dead) free from the embarrassment of present contradiction, and with little or no danger of successful prosecution for perjury. It is commonly recognized that this double relaxation of the ordinary safeguards must very greatly multiply the probabilities of error, and that hearsay evidence is an unsafe reliance in a court of justice. One of the exceptions to the rule excluding it is that which permits the reception, under certain circumstances and for limited purposes, of declarations of third parties, made contrary to their own interest; but it is almost universally held that this must be an interest of a pecuniary character; and the fact that the declaration, alleged to have been

thus extrajudicially made would probably subject the declarant to a criminal liability, is held not to be sufficient to constitute it an exception to the rule against hearsay evidence."

Mr. Justice Holmes, dissenting, with whom concurred Lurton and Hughes, JJ., says:

"The confession of Joe Dick, since deceased, that he committed the murder for which the plaintiff in error was tried, coupled with circumstances pointing to its truth, would have a very strong tendency to make anyone outside of a court of justice believe that Donnelly did not commit the crime. I say this, of course, on the supposition that it should be proved that the confession really was made, and that there was no ground for connecting Donnelly with Dick. The rules of evidence in the main are based on experience, logic, and common sense, less hampered by history than some parts of the substantive law. There is no decision by this court against the admissibility of such a confession; the English cases since the separation of the two countries do not bind us; the exception to the hearsay rule in the case of declarations against interest is well known; no other statement is so much against interest as a confession of murder; it is far more calculated to convince than dying declarations, which would be let in to hang a man. Mattox v. United States, 146 U.S. 140, 13 S. Ct. 50, 36 L. Ed. 917; and when we surround the accused with so many safeguards, some of which seem to me excessive, I think we ought to give him the benefit of a fact that, if proved, commonly would have such weight. The history of the law and the arguments against the English doctrine are so well and fully stated by Mr. Wigmore that there is no need to set them forth at greater length. 2 Wigmore, Ev., §§ 1476, 1477."

In the case of Brown v. State, 99 Miss. 719, 55 So. 961, 962, 37 L.R.A. (N.S.) 345, it was said:

"The rule excluding such confessions itself suggests the reason why they have not been more frequently re-

sorted to in behalf of the guilty. The confession in question was made out of court, was not supported by the oath of the party confessing, and the party was never subjected to cross-examination, which might very quickly have disclosed the falsity of the confession and the motive that prompted it. The law, in determining what is hearsay, does not admit what a witness states some other person told him, any more than it admits what still another person may have imparted to the one next in the line of communication. It is all hearsay; and no just exception can be made because the party confessing has put himself in a position of some hazard. Many motives, apart from the love of truth and justice, induce men to assume the gravest risks. Among the strongest of these is family affection, and it is observable that in this case the property against which the trespass was directed was that of Henry Brown and not his brother, the accused, and that in the confession proposed to be proved Henry Brown, while claiming to be the culprit, stated that his brother 'had suffered long enough about the matter.' The extreme case of a confession on the gallows by one claiming to be the true offender, employed by Wigmore to illustrate his view, affords no ground for the relaxation of the rule; for the experience assuring us that the last breath of man not wholly bad is sometimes employed in the asseveration of a falsehood justifies the rejection of the hearsay statements of a malefactor who, having no longer any concern as to his own fate, may wish to serve a pal, a kinsman, or a friend."

In Hines v. Commonwealth, supra, the learned annotator says:

"The overwhelming weight of authority supports the rule that on the trial of a criminal case evidence of the admission or confession of a stranger that he perpetrated the offense is not admissible as substantive evidence tending to exculpate the accused."

Under this statement follows a list of federal cases and cases from 24 states.

In Blocker v. State, supra, the learned annotator first says:

"The general rule in respect to the admissibility of confessions or admissions is well settled, although, strange to say, it has been necessary for the courts to repeatedly declare the rule in the same state, so persistently has the rule been assailed. The general rule laid down by the courts is that a confession or admission on the part of a third person that he committed the crime which the defendant is charged with having committed is mere hearsay, and not admissible in evidence in favor of the defendant where it does not constitute a part of the res gestae."

Under this statement follows a list of cases, state and federal.

And further the annotator says:

"The rule in respect to the admissibility of dying declarations goes no further than to make such declarations admissible where the death of the deceased is the subject of the trial and the circumstances of the death are the subject of the declaration. Hence the fact that a third person confesses to the commission of the homicide with which the defendant is charged upon his death bed, under the belief that he is dying, does not render the confession admissible in evidence as a dying declaration." Davis v. Commonwealth, 95 Ky. 19, 23 S. W. 585, 44 Am. St. Rep. 201.

And for the same reason a death-bed confession by a third person that he was guilty of a burglary is not admissible in exculpation of the defendant who is charged with its commission. People v. Hall, 94 Cal. 595, 30 P. 7.

The fact that the declarant is dead does not alter the character of the declaration made by him and render it admissible, notwithstanding its hearsay character. State v. West, 45 La. Ann. 14, 12 So. 7.

We do not consider it necessary to further review the authorities. We adhere to the well-established rule that evidence of confessions or admissions of a third person that he committed the crime which the defendant is charged with having committed are to be excluded as hearsay.

It follows that the evidence offered was incompetent for any purpose whatever, and the trial court did not err in excluding it.

These considerations also dispose of the contention that the court erred in overruling the motion for a new trial on the ground of newly discovered evidence.

Counsel for appellant also criticize some of the instructions given by the court.

It appears from the record that exceptions were taken to four of the instructions given. No authorities are cited in support of the criticisms made.

We have uniformly held that the instructions given by the court must be considered as a whole. The instructions define accurately and fully the law relating to robbery by firearms and correctly state the law of the case.

One of the grounds of the motion for a new trial and assigned as error is alleged misconduct on the part of the jury as shown by the affidavit of juror Claude Alexander, wherein he states that the other jurors in order to induce affiant to agree to a verdict of guilty stated in the jury room that Joe Newton's picture was in the rogue's gallery at Oklahoma City, and that he was a confirmed criminal and had been convicted of similar offenses, that he believed the defendant to be innocent, but on account of affiant's physical condition, being ill during the deliberation of the jury, and because of the statements made

by other jurors, affiant agreed to concur and did concur with the other jurors in returning a verdict of guilty.

The record shows that when the jury returned their verdict, the defendant present in person and by counsel, the following proceedings were had:

"The Court: Mr. Foreman, have you arrived at a verdict in this case? The Foreman: Yes, sir, we have, your Honor."

The verdict was handed to the court, passed to and read by the clerk.

On the motion of the defendant's counsel the jury was polled. Thereupon the jurors being each separately interrogated by the court, "Is that your verdict?" each for himself separately answered: "Yes." When the court clerk called the name of affiant, Claude Alexander, the court asked: "Is that your verdict, Mr. Alexander?" and said juror answered, "Yes, sir."

When the verdict is recorded, and the jury discharged, the sworn statements of a juror cannot be received to show that he did not agree to the verdict.

The rule repeatedly announced by this court is that affidavits or testimony of jurors in relation of what took place in the jury room cannot be received and considered by the trial court to impeach their verdict on the ground of misconduct. Spencer v. State, 5 Okla. Cr. 7, 113 Pac. 224; Vanderburg v. State, 6 Okla. Cr. 485, 486, 120 Pac. 301; Keith v. State, 7 Okla. Cr. 156, 123 Pac. 172; Hayes v. State, 35 Okla. Cr. 19, 247 Pac. 111; Revis v. State, 42 Okla. Cr. 198, 275 Pac. 351.

Other questions are raised as to the admissibility of ecrtain testimony, but after careful examination we find them so lacking in substantial merit that we cannot feel justified to extend the opinion by their discussion. .

Upon the record before us, we find nothing prejudicial to the rights of the defendant.

The objection to the sufficiency of the evidence to support a conviction is untenable, its credibility was for the jury.

The case appears to have been tried with exceptional care and ability, both on the part of the judge who presided and the able counsel who represented the state and those who represented the defendant as well, and appellant was ably represented in this court.

Upon consideration of the whole case, we are of the opinion that the defendant was fairly tried, the issues fairly submitted, and no error requiring a reversal is shown.

It follows that the judgment of the trial court should be affirmed, and it is so ordered.

DAVENPORT, P. J., and BAREFOOT, J., concur.