### R. A. GOODWIN v. STATE.

No. A-9593.   Feb. 1, 1940.
(99 P. 2d 181.)

382

H. S. McArthur and B. C. Franklin, both of Tulsa, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Sam H. Lattimore, Asst. Atty. Gen., for the State.

DOYLE, P. J. Plaintiff in error, R. A. Goodwin, herein referred to as defendant, was tried and convicted of the crime of receiving stolen property, upon an informa-

tion charging that in Tulsa county, on the 21st day of March, 1938, he did wilfully, knowingly and feloniously receive from Leo Davis, one 9x12 Oriental rug, of the value of $50, said property having been stolen from Mrs. B. H. Berkley, then and there knowing the same was stolen property, with the felonious intent to convert the same to his own use and benefit.

The jury fixed his punishment at two years' imprisonment in the state penitentiary and a fine of $250. Motion for new trial was duly filed and overruled July 15, 1938.

To reverse the judgment rendered on the verdict, he appeals.

The alleged errors argued in the brief and relied upon for a reversal of the judgment are: Error of the court in permitting the county attorney to endorse the name of an additional witness on the information when the case was called for trial; that the court erred in admitting incompetent and prejudicial testimony; that the court erred in admitting the testimony of the arresting officers, for the reason the same was based upon an illegal search and seizure, and that the evidence is insufficient to sustain the verdict.

The evidence shows that on the night of the date alleged, the home of Mr. and Mrs. Berkley, at 1113 South Owasso street, Tulsa, was burglarized by Leo Davis and Dan Stepper Davis; that they took from this burglarized home the rug described in the information. Mr. and Mrs. Berkley were away from home that night; that defendant, R. A. Goodwin, purchased this rug from Leo Davis the same night; that a few days later police officers of the city called at defendant Goodwin's home. His wife came to the door and they asked for Dr. Goodwin. He came to the door; the officers asked him if he had any property

there left by Leo Davis and Dan Stepper. He said "Yes, he did." The officers asked him if it would be necessary to get a search warrant, he said no, and told them to come in and get it. The officers on his invitation went in and found the rug in question rolled up under a bed. Dr. Goodwin told the officers he bought the rug and that he had been buying property from Leo Davis and Dan Stepper Davis from about the first of the year.

Mr. and Mrs. Berkley testified as to the time their home was burglarized, and as to the cost and value of the rug, and described the other property taken from their home, including a shotgun, a pistol, a radio and some linens.

The next witness for the state, Dan Stepper Davis, alias Dan Stepper, testified in substance as follows:

"I have lived around Tulsa for about 25 years. I am in jail now. I broke and entered a house at 1113 South Owasso, about March 21, this year. Leo Davis was with me; about 9 o'clock that night we pried the rear door open and entered; we took from the house a rug, a radio, a shotgun, a 45 pistol and some linens. It took us about 20 minutes to do this job. We loaded it in Leo's car, and drove to Dr. Goodwin's, on Greenwood, reaching there between 10 and 10:30. We told him we had this stuff. He said he could not use the gun but would take the other stuff, and we sold it to him for $20. He asked me if we got it here in town, I told him, 'Yes.' He had been buying stuff from us for some time. I started dealing with him in January." Asked: "Was it all stolen stuff he has been buying of you?" Defendant's objection overruled, witness answered: "Yes, since about the first of the year."

On cross-examination he stated:

"I have served time for liquor. I have been promised no immunity; I now have two burglary charges pending in this court against me, Leo Davis is dead, he was killed while burglarizing a house."

That he had burglarized not over three houses since the first of the year.

George Reif testified that he was a police officer and had occasion to aid in the search of the premises of Dr. Goodwin: Asked: "Did you have a search warrant?" Answered: "I did not."

Counsel for defendant asked to have the jury withdrawn so that the testimony of this witness could be tested in the absence of the jury.

Thereupon the court directed the jury to retire and remain together in the charge of the bailiff. Witness then testified that he went to defendant's house and knocked at the front door. Mrs. Goodwin opened the door and he asked if Dr. Goodwin was in the house, she answered "Yes" and Dr. Goodwin came to the door. Grady Porter of the police department was with him. He said "We are officers", and told the Doctor, "You are under arrest for knowingly receiving stolen property", then asked him if he had the stolen property that Leo Davis and Dan Stepper Davis had brought there, and he said "Yes", and he asked him if he wanted them to obtain a search warrant to get the articles, and Doctor Goodwin said, "No, I will turn them over to you." He opened the door and walked ahead down the hall to a bed room and pulled a large folded rug from under the bed. That Dan Stepper was under arrest at the time and was taken to the house with them, but was left in the car parked in front of the house with Chief Hyatt.

"Mr. Franklin: Comes now defendant, R. A. Goodwin, and moves the court to suppress the evidence in support of the search and seizure for the reason that said search and seizure was not had according to law, and the due process of law in violation of both the State and Federal Constitutions.

"The Court: Overruled. Exceptions."

The jury was returned into court.

Mr. Reif further testified:

"Dr. Goodwin came to the door, we told him that we were officers, and that he was under arrest for knowingly receiving stolen property. He asked him if he had any of the stolen property, rugs or other articles that Dan Stepper and Leo Davis had brought to him. He said he had. Asked if he had them on the premises, he said he did. We asked him if he was willing to turn the articles over to the officers, or if he wanted us to obtain a search warrant, and he said, 'Come right on in'. He unlatched the screen door, we went in. He walked down the hall into a rear room and pulled a folded rug from under the bed and took a radio from a closet in the same room, also some other things. The rug and other articles were taken to the police station."

I. C. Fisher testified that he was a police officer; that on the morning of the 22nd of March, this year, in a conversation with defendant at the police station, defendant said he had bought some merchandise from Leo Davis and Dan Stepper, to the amount of $60. We asked him why he bought this stuff, if he knew it was hot, and he said, yes, that was why he had it stored in the rear of his place of business until it cooled off. He said the last he had bought from Stepper and Davis was a radio and a rug, for which he paid Davis $20.

When the state rested, defendant interposed a demurrer to the evidence, which was overruled, exception reserved.

As a witness in his own behalf defendant testified:

"I have lived in Tulsa about nine years, I am a Chiropractor by profession, I am an ex-service man, I do not know Dan Stepper, I never had any dealings with him, I know Leo Davis, I first met him along the last of Janu-

ary, he came to my house and said he was selling second-hand goods for some concern, I bought some linens from him the first time, and paid him a fair price. He came to my house in the afternoon, I think it was on March 22, and sold me a rug for which I gave him $15. When the officers came, my wife went to the door, they asked for me, I was in bed, I went to the door. They said Leo Davis said he sold me some things that were stolen, I said, 'yes', he did, but I didn't know it was stolen property, I gave them the things. A day or two before I was arrested I noticed in a paper about a rug and some things having been stolen from the Berkley home. I thought possibly it might be one of the rugs. I got scared and put the rug under the bed. I made no statements to any officer. When I bought this stuff I had no idea at that time that it was stolen merchandise."

On cross-examination he stated: That about the last of January, he bought from Leo Davis some sheets, pillow cases, and some blankets and paid him $20; that about March 3rd, he bought from Leo Davis an electric roaster, a silver coffee urn, cream pitcher and sugar bowl, and paid him $12; that on the 22nd of March he bought the rug and radio from Leo Davis, and gave him $15 for the rug and $5 for the radio; that he did not see Dan Stepper Davis and did not tell the officers that he bought these things from Leo Davis and Dan Stepper Davis, that he told the officers that he never had any dealings with Dan Stepper Davis, that about 20 years ago, in the State of Kansas, he pleaded guilty to a statutory charge.

A number of witnesses qualified as character witnesses, and each testified that defendant's reputation in the community in which he lives for truth and veracity was good, and as to being a law-abiding citizen it was good.

Counsel for defendant in their brief state:

"The court erred in permitting the county attorney to indorse the name of Dan Stepper Davis, alias, Dan Step-

per, on the information. That counsel requested a continuance for twenty four hours in order to try and get ready, which request was by the court denied, and in view of the fact that the information charged that defendant had knowingly received stolen property from one Leo Davis, we think that the trial court under the circumstances, not only abused its discretion, but denied the defendant his constitutional and statutory rights."

There appears nothing in the record to support this contention, and there is no assignment of error based on this action of the court. The record shows that the name "Dan Stepper" was indorsed on the preliminary complaint, also on the information when filed in the district court. Before the case was called for trial the name was merely corrected by adding "Davis."

The Code of Criminal Procedure provides that the county attorney shall indorse on the information the names of the witnesses known to him at the time of filing the same. He shall also indorse thereon the names of such other witnesses that may afterwards become known to him at such time as the court may by rule prescribe. Sec. 2829, 22 Okla. St. Ann. § 303.

Under the statute permission to indorse the names of additional witnesses on the information is a matter resting entirely within the sound discretion of the trial court, and unless it clearly appears that it was an abuse of discretion and that it was prejudicial to the substantial rights of the defendant, it will not be held to be reversible error. Grayson v. State, 12 Okla. Cr. 226, 154 P. 334; Whitworth v. State, 32 Okla. Cr. 200, 239 P. 930.

The next contention made is that the court erred in admitting testimony of other thefts and the receiving of the property stolen.

As a general rule, evidence of other offenses, though of the same nature, is not admissible for the purpose of showing that the defendant is guilty of the particular offense charged. To this rule, however, there are well settled exceptions, and one of them is that where the offense or offenses tend to identify the defendant with the offense charged, or where such evidence is for the purpose of showing that the offense charged was a part of a system, plan or scheme, including other like offenses, such evidence is admissible. State v. Rule, 11 Okla. Cr. 237, 144 P. 807.

Upon the undisputed facts in the instant case, the contention made is wholly without merit.

It is also contended that the court erred in admitting certain testimony offered by the arresting officers, for the reason that the same was based upon an illegal search and seizure.

Upon the record before us, we deem it sufficient to say that only unreasonable searches and seizures are prohibited. The right, without a search warrant, contemporaneously to search the place where the arrest is made, in order to find and seize things connected with the crime as its fruits, or as a means by which it was committed, or which may be used as evidence on the trial, is not to be doubted. Griffin v. State, 57 Okla. Cr. 176, 46 P. 2d 382; Newton v. State, 61 Okla. Cr. 237, 71 P. 2d 122.

Whether an explanation respecting possession of property recently stolen is reasonable or not, is ordinarily a question for the jury the same as any other question of fact, and a reasonable explanation will not necessarily lead to an acquittal, and a verdict sustained by substantial evidence will not be disturbed by this court, unless it appears that the same was given under the influence of passion or prejudice.

Carefully considering the whole testimony in this case, we have no doubt of its sufficiency to justify the verdict, and finding no error in the record that will warrant this court in disturbing the verdict the judgment appealed from is affirmed.

BAREFOOT and JONES, JJ., concur.