**Petition of Jack WININEGER for Writ of Error Coram Nobis.**

**No. A-12684.**

Criminal Court of Appeals of Oklahoma.

Nov. 26, 1958.

On Petition for Rehearing Jan. 28, 1959.

On Second Petition for Rehearing March 25, 1959.

James O. Braly, Durant, for petitioner.

Mac Q. Williamson, Atty. Gen., Sam H. Lattimore, Asst. Atty. Gen., for respondent.

BRETT, Presiding Judge.

This is an original proceeding instituted for writ of error coram nobis brought by Jack Winineger. The petitioner complains that he was convicted of the conjoint murder of one Morgan Haddock and sentenced to serve a term of life imprisonment in the state penitentiary. From said conviction the petitioner appealed to this Court and said appeal was disposed of herein by affirmance on May 13, 1953, and rehearing denied on June 3, 1953. Winineger v. State, 97 Okl.Cr. 64, 257 P.2d 526. The petition is properly lodged in this Court, the conviction having been appealed to and affirmed in this Court. Hurt v. State, Okl.Cr., 312 P.2d 169.

In his petition, petitioner alleges, in substance, his trial was conducted in such manner as to deprive him of due process of law and coram nobis is his only remedy. The many allegations in the petition may be summarized as follows: First, he alleges the facts he now desires to present were known by the defendant at the time of trial, but they were suppressed by his counsel's refusal to let him testify in the case. Second, if he had been permitted to testify at the trial, his testimony would have prevented the judgment. The substance of his contentions in this regard are: (a) that he had a complete alibi to the effect he was answering a call of nature some distance away at the time the shot was fired which killed Officer Haddock; (b) that if permitted to testify, he would establish he was not a party to the plans to effect the officer's death and he would categorically deny he killed Officer Haddock, and assert he did not desire it or

effect it either directly or indirectly; (c) that he would have explained to the best of his knowledge and ability the guns in his car, which explanation would have been in his favor with the jury; (d) that it was coincidental as to how his conjoint defendants and himself got together; (e) that if he were permitted by coram nobis, he would account for his acts and his involvement in the crime, and among the things he would deny would be he told Mr. Hicks he only used one shell. (It should be borne in mind that the original record shows he borrowed the shot gun which killed Haddock together with four shells loaded with No. 4 shot from a Mr. Hicks, as he explained, to go duck hunting, and that at 2:00 a. m., the night of the killing, or shortly thereafter, he returned the gun and three shells at which time the foregoing statement was allegedly made. He does not assert he did go duck hunting.) In his petition he says he cannot account for the fourth shell; (f) that Hiram Robinson, a conjoint defendant, had told him, "I killed Haddock;" (g) that his lips being sealed to the truth by his attorneys at the trial caused him to be convicted; (In this connection, he does not allege fraud, coercion, intimidation, or duress. If anything, he alleges mistake of judgment.) (h) that four jurors named in his petition would testify, if permitted to do so, that if the defendant had testified, it might have changed the result of the trial; (i) that there is a witness, not named, who could establish the moving cause of Haddock's death and his testimony will not remotely connect the defendant with the crime or cause therefor; (j) that it was asserted he had stated he would get Haddock, which he would deny if he were given another opportunity; (k) that he did tell untruths to Sheriff Barker about where the gun would be found before he took the Sheriff to Mr. Hicks' home where the gun had been returned the night of the killing; (l) that he and Robinson had been together most of the afternoon and that also Freddie Richardson was with him and will confirm the petitioner's allegations in this

regard; (m) that he had spoken to Mack White about going duck hunting and White will corroborate him in this regard; and (n) that he can explain how he, Robinson, and Sargent, the other conjoint defendant, came to be in the car shortly before the killing.

To the foregoing petition the Attorney General has interposed a motion to dismiss to the effect the allegations contained therein are insufficient to state a cause for relief by writ of error coram nobis.

Some of the matters alleged in the petition might have been reached by the petitioner on the motion for new trial as newly discovered evidence. 22 O.S. 1951 § 952. In this connection it was held in State ex rel. Burford v. Sullivan, 86 Okl. Cr. 364, 193 P.2d 594, 596:

"The remedy by writ of error coram nobis is supplanted and excluded by statute in all cases where the statutes afford a remedy by motion for new trial."

Relief by motion for new trial by reason of newly discovered evidence was lost by waiver and coram nobis is not a substitute therefor. Kennamer v. State, 59 Okl.Cr. 146, 57 P.2d 646. The same is true of the petitioner's right to testify at the trial. The petitioner is now estopped by his failure to assert the right in the trial court he now seeks to assert. It has been repeatedly held:

"Functions of writ of error coram nobis are limited to an error of fact for which statute provides no other remedy, which fact does not appear of record or is unknown to court when judgment is pronounced, and which, if known, would have prevented the judgment and also which is unknown and could not have been known to the party by exercise of reasonable diligence in time to have been otherwise presented to court, or which the party is prevented from presenting by duress, fear or other sufficient cause. 20 O.S.1951 §§ 40, 41; 22 O.S.1951 § 9.

"Writ of error coram nobis will reach only matters not cognizable on motion for new trial, or in arrest of judgment, or on appeal."

Hendricks v. State, Okl.Cr., 297 P.2d 576, 577; Hurt v. State, supra. This petition does not contain allegations that he was prevented by duress, force or other sufficient cause from making said facts known to the trial court. In re Eckert, Okl.Cr., 295 P.2d 814. The foregoing allegations of fact do not bring the case within the last recited rules. It is apparent that the defendant at the time of trial, on the advice of able counsel, had his election under the law as to whether he would stand mute or whether he would take the stand and disclose what he now asserts to be the facts. If the practice herein petitioned for were to be approved, there would never be any end to litigation in criminal cases and defendants could trifle with the courts. To uphold the petition would open up an interminable area of speculative practice and degenerate the sacred scales of justice into a device little short of the tawdry equipment of a dice game. It would reduce the law of election of procedure to a game of chance. Fortunately, the decisions in the law are not so fabricated. Once a deliberate and reasoned election not to testify has been made and pursued to finality in the trial of a criminal case, affirmed on appeal, that ends the matter. 28 C.J.S. Election of Remedies § 29, p. 1102. An election to pursue one of two inconsistent remedies operates as an abandonment or waiver of the other. We know of no reason why this principle should not apply in this situation. In such case as the one at bar, the defendant may not at a later time reopen the case and have another jury speculate on his truthfulness, which he was unwilling to have weighed in the first instance. In any proceeding, litigants should not be permitted to play fast and loose with either the law or the courts. This petitioner seeks so to do.

Since all the essential facts related in the petition herein were available to the

petitioner at the trial, or with reasonable diligence could have been available, such situation does not present a case for relief by writ of error coram nobis. The record of the trial of the case itself shows that due process was accorded the petitioner. The state's motion to dismiss·is sustained and this petition accordingly dismissed, and permission to seek relief in the trial court by writ of error coram nobis is denied. Hendricks v. State, supra; Hurt v. State, supra.

POWELL and NIX, JJ., concur.

On Petition for Rehearing.

BRETT, Judge.

This petition for writ of error coram nobis was denied by the Court's opinion of November 26, 1958. The matter thereafter came on for re-hearing on petitioner's motion and oral argument was had thereon on December 17, 1958. After the court heard the oral argument on the theories advanced, the petitioner was granted twenty days in which to file a supplemental petition and support the same with affidavits. Thereafter, the supplemental petition was filed together with affidavits attached.

Said petition, in substance, alleged that petitioner was prevented by his attorney, W. L. Steger, from testifying in his own behalf for the reason Steger also represented his co-defendant, Grady Sargent; that said attorney obtained a severance for them and that petitioner was tried first; that Mr. Steger would not permit him to testify at his trial lest petitioner further implicate Sargent and stated he (Steger) had to look out for Sargent; that petitioner was warned by Sargent he should be careful what he told the authorities for the reason Fern Sargent, his wife, was going to support with sworn testimony Sargent's alibi, that he was home with her when the crime was committed.

He further alleges that said attorney informed him the state was without sufficient evidence to convict him, and if petitioner did not testify it would work to the material advantage of both himself and Sargent. He pleads that he was denied the right to testify although he repeatedly sought so to do, and was prevented from so doing by reason of the adverse interests of Sargent and Steger and that the method employed amounted to the use of coercion or force. He also alleges that his failure to testify was through no negligence of his own but was solely by reason of. his ignorance, and had it not been for his ignorance, he would have asked for the removal of the said attorney and then demanded of his new counsel the right to be heard from the witness stand. He asserts that if he had testified in the trial it would have brought about his acquittal. He says he does not believe the said Steger was acting maliciously, but in absolute good faith, but that it resulted to his great prejudice in denial of a fair trial. He asserts Mr. Mathers, his other counsel, would corroborate his testimony relative to his failure to testify, and that Mr. Steger has indicated in a sworn statement attached to the petition he is ready to testify concerning the foregoing allegations when called upon in court so to do.

Further, the petition alleges that the widow of Grady Sargent, Fern Garnett, will, at a hearing of this petition, testify that her husband, Grady Sargent, made a deathbed declaration that at the time of the killing, the petitioner was not at the scene of the crime; that petitioner had nothing to do with the murder of Morgan Haddock; that he, Sargent, was at the scene of the crime when the killing occurred; and that he, Sargent, paid another man $500 to kill Haddock. He further asserts that this information was not made known to Mrs. Garnett and petitioner until after petitioner was tried and convicted, but remained locked within the conscience of Grady Sargent until shortly before his death. Petitioner urges that this information was likewise not known to Mr. Steger, and could not have been available to petitioner for presentation to the jury at the time of trial; that if this evidence had been pre-

sented to the jury he would not have been convicted. In this connection, he says it has been withheld by Mrs. Garnett because of her extremely nervous condition; that her reluctance to disclose the evidence was enhanced by the severe warning of her family not to do so; that Mrs. Garnett's affidavit alleges that finally upon her own volition and the encouragement of her present husband in good conscience she was compelled to tell of Grady Sargent's declaration; and that her affidavit in the foregoing regards is attached to the petition. The petitioner asserts that her testimony would establish that Hiram Robinson killed Haddock and that would free him from any involvement of which he now stands convicted. Petitioner alleges that the facts of Grady Sargent's deathbed confession, as revealed by Mrs. Garnett, would be corroborated by Rev. Ferrill Odom, the Methodist Minister in Caddo at the time of the confession, if he were called as a witness. Attached to the petition is the affidavit of the petitioner supporting the allegations of the petition.

Finally, he prays that writ of error coram nobis be granted that he may be heard by the trial court in the foregoing regards, and other witnesses' testimony be heard in support of the petition and the supplemental petition thereto.

 It is apparent from the foregoing that the evidence sought to be obtained by coram nobis from Mr. Steger and Mr. Mathers, petitioner's attorneys at the time of trial, would not establish any ultimate fact relative to the petitioner's guilt or innocence. Rather, by his allegation of an adverse interest on the part of Mr. Steger, he states in effect he was denied the aid of counsel, a question not of fact, but of due process. The worth of such question we do not consider, since the writ of error coram nobis is not available to attack the validity of the judgment on jurisdictional grounds. It has been repeatedly held that the writ of error coram nobis is limited to errors of fact "unknown at the time of the trial to the party seeking relief and to

the court." Hurt v. State, Okl.Cr., 312 P.2d 169, 176.

 On the first petition for rehearing by the petitioner, we were without the aid of argument and brief of the state concerning the admissibility of the alleged deathbed statement of Grady Sargent. We held that the deathbed statement of Grady Sargent, petitioner's co-defendant, was admissible as a statement against interest and we ordered the hearing on the petition to proceed in the trial court. Thereafter, on the state's petition for rehearing, oral argument and memorandum brief, we find we were in error, hence, that part of the opinion is stricken for the reasons hereinafter set forth. It has been called to our attention that this Court has long been committed to the rule aptly stated in Newton v. State, 61 Okl.Cr. 237, 71 P.2d 122, 127:

> "The rule in respect to the admissibility of dying declarations goes no further than to make such declaration admissible where the death of the deceased is the subject of the trial and the circumstances of the death are the subject of the declaration."

Mulkey v. State, 5 Okl.Cr. 75, 113 P. 532; Orme v. State, 63 Okl.Cr. 325, 75 P.2d 482; Graham v. State, 80 Okl.Cr. 159, 157 P.2d 758; Waller v. Commonwealth, 178 Va. 294, 16 S.E.2d 808; People v. Tilley, 406 Ill. 398, 94 N.E.2d 328; Mays v. Commonwealth, 200 Ky. 678, 255 S.E. 257; State v. Doris, 51 Or. 136, 94 P. 44, 16 L.R.A.,N.S., 660. This evidence would not be admissible since the declaration was not concerning the death of the decedent, Sargent. Nor would it be admissible as a statement contrary to the declarant's interest, since, as was said in Newton v. State, supra, this exception applies not to cases in which the declaration would subject the declarant to a criminal liability, but the interest must be of a pecuniary character to be admissible. The chief grounds for exclusion, however, are that the reported declaration, if made, is made without the sanction of an oath, with no re-

sponsibility on the part of the declarant for error or falsification, without opportunity for the court, jury, or parties to observe the demeanor and temperament of the witness, and to search his motives and test his accuracy and veracity by cross-examination, these being the most important safeguards of the truth where a witness testifies in person and of his own knowledge. Moreover, he who swears in court to the extrajudicial declaration does so (especially where the declarant is dead) free from the embarrassment of present contradiction and with little or no danger of successful prosecution for perjury. Relaxation of the foregoing safeguards would multiply the probability of error and the unsafe reliance upon such evidence in a court of justice. Newton v. State, supra.

The same principles apply to the testimony of Rev. Ferrill Odom.

> "While it is elementary that the defendant in a criminal case may show that another person committed the crime charged, and that he had no participation in it * * *, such guilt of a third person must be shown by competent evidence."

Newton v. State, supra. This principle is so sound it applies with equal force to evidence offered in support of a petition for writ of error coram nobis. The proposed evidence of both Mrs. Garnett and Rev. Odom under the foregoing authorities is clearly inadmissible. On second rehearing the petition for writ of error coram nobis is accordingly denied on the basis of petitioner's failure to state any additional legal grounds for relief.

POWELL, P. J., concurs.

NIX, J., dissents.

NIX, Judge (dissenting).

The question as to the admissibility of deathbed confession and a dying declaration has through the ages of jurisprudence been a highly controversial subject. The majority opinion is not without generous authority as is indicated by the numerous citations listed by Judge Brett in his opinion. However, the rule therein adopted is likewise the target of many decisions and texts' authorities who have consistently assailed the rule since its inception.

The highly evident discord of the authorities on this subject is reflected in the instant case, resulting in three decisions being handed down by the court in an effort to reach an equitable analysis of the diversified decisions of other jurisdictions. The first decision denied the writ of coram nobis and recalled for oral argument. The second decision granted the writ. Upon rehearing at the request of the state, the writ was denied. The second decision granting the writ relied upon the opinion of Justice Holmes which was a strong dissent concurred in by Justice Lurton and Hughes in the case of Donnelly v. United States, 228 U.S. 243, 248, 33 S.Ct. 449, 57 L.Ed. 820.

On the second petition for rehearing the writ was denied upon the rule adopted in Newton v. State, 61 Okl.Cr. 237, 71 P.2d 122, 126. The Newton case adopted the rule in substance. That on trial of a criminal case, evidence of the admission or confession of a stranger that he perpetrated the offense is not admissible as substantial evidence tending to exculpate the accused. It also recognizes an exception to the general rule as follows:

> " 'One of the exceptions to the rule excluding it is that which permits the reception, under certain circumstances and for limited purposes, of declaration of third parties, made contrary to their own interest; but it is almost universally held that this must be on interest of a pecuniary character; and the fact that the declaration, alleged to have been thus extrajudicially made would probably subject the declarant to a criminal liability, is held not to be sufficient to constitute it an exception to the rule against hearsay evidence.' "

Discussing this matter Justice Hughes in his opinion, supra, said [228 U.S. 243, 33 S.Ct. 461]:

"The confession of Joe Dick, since deceased, that he committed the murder for which the plaintiff in error was tried, coupled with circumstances pointing to its truth, would have a very strong tendency to make anyone outside of a court of justice believe that Donnelly did not commit the crime. I say this, of course, on the supposition that it should be proved that the confession really was made, and that there was no ground for connecting Donnelly with Dick. The rules of evidence in the main are based on experience, logic, and common sense, less hampered by history than some parts of the substantive law. There is no decision by this court against the admissibility of such a confession; the English cases since the separation of the two countries do not bind us; the exception to the hearsay rule in the case of declarations against interest is well known; no other statement is so much against interest as a confession of murder; it is far more calculated to convince than dying declarations, which would be let in to hang a man. (Mattox v. United States, 146 U.S. 140, 13 S.Ct. 50, 36 L.Ed. 917); and when we surround the accused with so many safeguards, some of which seem to me excessive, I think we ought to give him the benefit of a fact that, if proved, commonly would have such weight."

Your writer has great deference for the logic so well expressed in the opinion of Justice Holmes. The cultured reasoning invoked by Justice Holmes permits the rules of evidence to get at the truth even to the extent of unsealing the tomb. It is shocking to the sense of justice and it would be well to know upon what civilized justification could our judicial officers base a rule of evidence which would forbid an accused from exonerating himself by rendering inadmissible a confession of the actual culprit because death had ensued thereafter. Professor Wigmore, who recognized the fallacy of the general rule and severely criticizes the same had this to say in his treatise on evidence:

"It is plain enough that this limitation, besides being a fairly modern novelty of judicial invention, is inconsistent with the broad language originally employed in stating the reason and principle of the present exception as well as with the settled principle upon which confessions are received."

"The only practical consequences of this unreasoning limitation are shocking to the sense of justice; for, in its commonest application, it requires, in a criminal trial, the rejection of a confession, however well authenticated, of a person deceased or insane or fled from the jurisdiction (and therefore quite unavailable) who has avowed himself to be the true culprit. The absurdity and wrong of rejecting indiscriminately all such evidence is patent."

He further says:

"It is therefore not too late to retrace our steps, and to discard this barbarous doctrine, which would refuse to let an innocent accused vindicate himself even by producing to the tribunal a perfectly authenticated written confession, made on the very gallows, by the true culprit now beyond the reach of justice. Those who watched (in 1899) with self righteous indignation the course of proceedings in Captain Dreyfus' trial should remember that if that trial had occurred in our own Courts, the spectacle would have been no less shameful if we, following our own supposed precedents, had refused to admit what the French court never for a moment hesitated to admit—the authenticated confession of the absconded Major Esterhazy, avowing himself the guilty author of the treason there charged, and now known beyond a doubt to have been the real traitor."

Your writer particularly disagrees with Syllabus No. 4 of the majority opinion as

to the exception to the rule being confined to statements against *pecuniary* interest. I cannot feel that the exception to the rule would lend significance to statements against pecuniary interest and exclude statements against penal interest. How could it be said that one involved in crime could possibly attach more importance to his monetary assets than he would to his liberty or pursuit of happiness. No doubt the hearsay rule as founded upon the desire to prevent perjury with impunity, it follows that the limitation which so circumscribes the exception to the general rule which admits declaration against interest, as to exclude all admissions which are against 'penal' interest, is tantamount to a declaration that, while a man who makes an admission against his pecuniary or proprietory interest will be presumed to tell the truth, yet he is presumed to be a liar when his statement is against his penal interest. It is going far afield to say that, whereas mankind holds property on such high regard that a statement to the detriment of his title and interest therein will be taken as true and a statement which could forever deprive him of his liberty is false, that would be to say that the average individual thinks so little of liberty, life and soul that he would slander and falsely condemn this precious heritage for the purpose of exonerating another who by the same token has no greater solicitude for his own liberty, life or soul and this is especially unjustifiable in the light of common knowledge that the individual, instead of having a higher regard for property than for life and liberty, will, when accused of crime, exhaust his entire material wealth to secure liberty, life and vindication. See 37 L.R.A.,N.S., 351 for annotation and discussion.

The practicality of such a rule in a civil case could be readily understood because money or property would be the subject of the suit. But the application of such a rule in a criminal case would by no degree of equitable reasoning point toward justice. In a criminal case the yardstick with which a statement against interest should be measured must be as to the detriment cast upon liberty, life, and unrestricted freedom to which one would otherwise be entitled. (See Wigmore on Evidence, Vol. II, § 1476 for a history of pecuniary rule originating as to permit in evidence records of those charged with receipt of money.)

The rule in the majority opinion as to pecuniary interest controversial nature that it should not be encouraged or expanded and your writer did not want it to become the law in Oklahoma. I feel the rule to be unjust, impractical, barbarous, and inapplicable in criminal cases. However, by virtue of the majority opinion, it is now the law in our state.