## SYL. KLEIN v. STATE.

No. A-2794.    Opinion Filed December 14, 1918.

Rehearing Denied January 6, 1919.

(176 Pac. 414.)

1. **CONTINUANCE—Denial—Grounds—Absence of Counsel.** Where one of three counsel employed to defend the accused is absent at the time the case is called for trial, attending another court, an application for a continuance on the ground of the absence of such counsel is properly denied, where the other counsel employed are present in court to defend the accused and are familiar with the details of the case.

2. **SAME—Appeal and Error—Discretion of Trial Court.** Motions for a continuance are addressed to the discretion of the trial court, and the appellate court may scrutinize the entire record in order to determine whether the trial court has abused its discretion in overruling a motion for a continuance.

3. **APPEAL AND ERROR—Remarks of Judge—Motion and Exception.** Where it is claimed that the remarks of the trial judge were prejudicial to the defendant, a motion should be interposed to withdraw such remarks from the consideration of the jury, and, if such motion be overruled, then proper exception should be taken to the court's action. The trial court should be afforded an opportunity to withdraw from the consideration of the jury alleged

improper remarks made during the progress of the trial, and, where such an opportunity is not given the trial court, the alleged misconduct must amount to a deprivation of some constitutional or statutory right guaranteed to the defendant before a judgment of conviction will be set aside upon such ground in this court.

4. **SAME—Misconduct of Trial Judge—Effect.** This court is not inclined to view with favor alleged misconduct of the trial court committed at the invitation of defendant's counsel.

5. **EVIDENCE—Larceny—Severance.** In a prosecution for larceny of live stock, certain evidence offered by the defendant to prove that a codefendant had admitted to several persons, who were called as witnesses, that he (said codefendant) had been stealing other live stock and that the defendant knew nothing about it, is properly excluded, where a severance has been taken and such codefendant is not on trial, nor a witness in the case.

6. **LARCENY—Live Stock—Sufficiency of Evidence.** For evidence held sufficient to sustain a conviction, see body of opinion.

7. **APPEAL AND ERROR—Burden of Showing Error—Briefs.** The burden is upon the appellant, not only to assert that error occurred at the trial, but to support such assertion by both argument and authority.

*Appeal from District Court, Pontotoc County;*
*George C. Crump, Assigned Judge.*

Syl Klein was convicted of larceny of live stock and sentenced to serve a term of two years in the state penitentiary, and appeals. Affirmed.

*Crawford & Bolen,* for plaintiff in error.

*S. P. Freeling,* Atty. Gen., and *R. McMillan,* Asst. Atty. Gen., for the State.

MATSON, J. Among other assignments of error relied upon to reverse this judgment is the refusal of the court to grant a continuance on account of the absence of C. C. Williams, a lawyer employed to defend the accused, who was at the time of the application in attendance before the Supreme Court in Oklahoma City.

The application shows on its face that, in addition to the said C. C. Williams, the defendant had also employed the law firm of Crawford & Bolen to assist in his defense, and that the said Crawford & Bolen were present in court and presented the application for a continuance. The application was to continue the case for the term, or until a later day in the term. The record shows that the Hon. George C. Crump, the regular judge of the Ninth judicial district, had been assigned to hold court at Ada, Pontotoc county, in the Seventh judicial district for the period of two weeks, commencing on Monday, the 21st day of February, 1916. This application was presented on the 29th day of February, 1916. To have granted a continuance, thereforce, would have meant practically to continue the case beyond the term for which the trial judge had been assigned.

As heretofore repeatedly held by this court, applications for a continuance are addressed to the discretion of the trial court, and that court's action in overruling such a motion will not be disturbed unless it appears that there has been a manifest abuse of discretion therein. It appears from the face of the motion that one of counsel who had been employed to defend the accused exercised the option of appearing in another case in which he was employed to the exclusion of this case. The accused, however, had remaining two able counsel to defend him, who appeared in the trial court and, as the record discloses, protected his rights at every step during the trial.

In order to determine whether or not a trial court has abused its discretion in overruling such a motion as this, the appellate court may scrutinize the entire record for that purpose, and if it appears from the record that the court's action did not amount to a deprivation of the right

of counsel to the defendant, but on the contrary, it clearly appears that counsel who represented defendant were familiar with the details of the case and were prepared to protect the defendant's rights throughout the trial, it cannot be said, under such circumstances, that there was an abuse of discretion in overruling the motion for a continuance.

In the case of *Payne v. State*, 10 Okla. Cr. 314, 136 Pac. 201, it is held:

"An application for continuance, for the term, on the ground of the absence of leading counsel, is properly denied, where the defendant is duly represented by his other counsel."

The Payne Case is directly in point and is decisive of the question here presented relating to the alleged error in overruling the motion for a continuance.

It is further contended that the trial judge, greatly to the prejudice of the defendant, made certain remarks which clearly conveyed to the jury the impression that he believed the defendant to be guilty.

The matter most complained of is contained in the following excerpt from the record as part of the cross-examination of the witness George Pryor:

"Q. They were using something like a beef a day in that shop, weren't they? A. Yes, sir.

"Q. And at the time that this beef came in they just had a beef and half that morning early before you went to delivering? A. I said about half beef besides this, maybe little over.

"Q. That make a beef and half? A. Yes.

"Q. This beef a big one or little one? A. Medium size.

"Q How do you remember this particular morning, when beef comes in there practically every day? A. Because little bit out of the ordinary for one to be in there that early in the morning at the back door.

"Q. Didn't you ever unload at the back door? A. Never did while I was there.

"Q. Can you give the jury the reason why you go to the back door to unload a beef when you cannot tell the difference between one beef and another?

"By Mr. Bullock: Objected to as argumentative.

"By the Court: Sustained.

"By Mr. Bolen: Exception.

"Q. And he said he got it out of Erwin's pasture? A. Got it out of Erwin's pasture.

"Q. Didn't he say he got it out at Erwin's? A. Said got it out of Erwin's pasture.

"Q. That all he say about it? A. All I remember of.

"Q. Erwin had lots of cattle? A. I don't know.

"Q. Harry never said whether bought or stolen? A. No, sir.

"Q. And Syl never asked him whether bought or stolen it? A. I never heard.

"Q. And told Syl, said, 'Better get rid of the hide'? A. I never heard him say those words.

"Q. Say, 'We will put the hide in the refrigerator'? A. Said, 'We will put it in the top of the refrigerator.'

"Q. Big glass there? A. No, sir.

"Q. Top of the refrigerator has not got a glass on it? A. No, sir.

"Q. Put hide up there? A. Where the ice was.

"Q. You suspicion anything then? A. I did.

"Q. You suspicioned what? A. I thought it out of the ordinary for him to put it up there.

"Q. That all you suspicion? A. I thought it was stolen.

"Q. You thought it was stolen? A. Yes.

"Q. After you thought this beef was stolen, you did not ask Syl whether it was stolen or not? A. I did not.

"Q. Did not ask Harry? A. I did not.

"Q. You and Harry close friends, very intimate? A. Not particular.

"Q. Did you run together all the time? A. Not all the time.

"By Mr. Bullock: Objected to as repetition.

"By the Court: Sustained.

"By Mr. Bolen: Exception.

"Q. You say you shipped some of that beef off yourself? A. I helped wrap it to ship.

"Q. You know you violating the law when you helped ship stolen beef?

"By Mr. Bullock: Objected to; no proof he knew it, working there in the shop.

"By Mr. Bolen: Said he suspicioned it.

"By Mr. Bullock: Suspicion and know a thing two different propositions.

"By the Court: Sustained.

"By Mr. Bolen: Exception.

"Q. You helped deliver and scatter that beef over town?

By Mr. Bullock: Objected to as immaterial.

"By the Court: Sustained.

"By Mr. Bolen: Exception.

"By Mr. Bolen: If I cannot cross-examine this witness, we just as well withdraw our plea.

"By the Court: Immaterial to me whether you do or not, proceed with this case. The object of cross-examination is to elicit the truth. To see whether the witness telling the truth or falsehood, and not to abuse him or anything of that kind, but for the purpose of eliciting the truth.

"By Mr. Bolen: If I have asked a question that is disrespectful, I would like to have the court point it out.

"By the Court: All the way through, your examination of the witness has been indicative that this witness was not telling the truth and that he was a *particeps criminis* in the crime.

"By Mr. Bolen: That is what I am trying to prove, that he saw all these circumstances and he went ahead.

"By the Court: Take a boy 20 years old working around a butcher shop, he will do lots of things that a man your age or my age may not do."

Other instances are disclosed in the record wherein counsel for the defendant and the trial judge engaged in considerable argument back and forth. Counsel endeavored to convince the trial judge that his rulings on the admissibility of evidence when against the defendant were incorrect. The judge, on the other hand, in response to counsel's argument, stated his reasons for so holding. The matters here complained of were the results of these colloquys between counsel and trial judge, and occurred in most instances after the court had ruled upon the objection and counsel for defendant had taken his proper exception. The excerpt above incorporated shows clearly

that, at the time this particular colloquy occurred between counsel for the defendant and the trial judge, which is now claimed to be so prejudicial to the substantial rights of this defendant, no motion was made to withdraw the remarks from the consideration of the jury. Farther along in the record, however, we find that the trial judge did instruct the jury that "side-bar remarks" between counsel and the court were not to be considered by them.

If the trial judge was guilty of any misconduct in making the remarks complained of, it was done at the invitation of defendant's counsel, and this court is not inclined to view with favor alleged errors that are invited in this manner.

The defendant is entitled to a fair and impartial trial, and the trial judge should not assume the role of prosecutor and inject into the record remarks and insinuations that clearly indicate a belief in the defendant's guilt, and if this is done, and the record shows that the defendant was prejudiced thereby, this court has repeatedly held that a judgment of conviction will be reversed because of such misconduct. But it is also incumbent upon counsel to respect the rulings of the trial judge, and to be satisfied by making a record for appeal by taking the proper exceptions in the trial court when the court has ruled adversely, without entering into a discussion of the merits of the court's ruling, and where counsel prefer rather to argue with the court, and thus invite a reply to which no exception is taken at the time, the alleged misconduct thus provoked and invited will not be considered grounds for a reversal of a judgment of conviction.

Also, it is contended that the court erred in excluding certain evidence offered by the defendant. The evidence to which objection was sustained was offered to prove that

one Harry Wright, who was a partner with this defendant in the butcher business in the city of Ada, had admitted to several persons who were called as witnesses that he (Wright) had been stealing other cattle, and that the defendant, Klein, knew nothing about it. The court excluded this testimony on the theory that it was hearsay and would not tend to disprove the guilt of the defendant of the particular crime charged. The rulings of the trial court were correct; Wright was not offered as a witness.

In the case of *Dykes v. State*, 11 Okla. Cr. 602, 150 Pac. 84, this court held:

"A defendant who is being tried on a criminal charge is not entitled to introduce proof which has for its purpose the establishing before the jury the fact that some other person has confessed that he commtted the crime, and that the defendant had nothing to do therewith and was not concerned therein."

It is also contended that the judgment of conviction is not sustained by sufficient evidence.

The theory of the state was that the defendant and one Harry Wright, who was his partner in the butcher business in the city of Ada, were acting together in the theft of the steer, the property of Pete Erwin, for which theft this defendant was convicted. The defendant denied any knowledge of the larceny of this animal, although he paid Erwin for the same some time after the theft was discovered, and he also paid Erwin for a cow and a hog that had been previously stolen from the same premises and sold through their butcher shop.

One state witness testified that he delivered meat for the defendant and Wright, and that about the time that this steer was stolen he went to the butcher shop one morning about 5:30 and found the defendant and Wright un-

loading a steer that answered the description of Erwin's stolen steer, at the back door of the butcher shop, and that Wright told the defendant in the presence of this witness that the butchered animal had come from Erwin's pasture, which was located about a half mile from the slaughter-house used by defendant and his partner, Wright.

Defendant helped conceal the hide of the animal in that part of the refrigerator used for storing ice, and also directed that the head be put in the furnace and burned up.

Defendant denied any knowledge of Wright's having stolen such an animal from Erwin's pasture until some time afterwards, at which time he says that he paid Erwin for the same, although having no connection whatever with the larceny thereof. The argument is advanced here that the evidence on the part of the state only makes out a case of receiving stolen property; but it is the opinion of the court that the jury was authorized to conclude from the evidence introduced that Wright and Klein were engaged in the larceny of animals for slaughtering purposes, and were stealing and selling the same through their butcher shop in Ada, and that the larceny of this particular animal was accomplished with full knowledge and consent of both said parties; one aiding and abetting the other therein.

The young man who delivered meats for the defendant and his partner, Wright, testified that it was customary for them to unload the butchered cattle at the front door of the butcher shop, and that the fact that on this particular morning defendant and his partner, Wright, were found in the act of unloading a butchered steer at the back end of the shop, made him suspicious that something was wrong.

This circumstance, in connection with the fact that the defendant helped conceal the hide and ordered the head of the animal to be burned so that it could not be identified, indicates clearly that there was an agreement between Wright and Klein to meet at the butcher shop very early on the morning that this steer was butchered, one party knowing as well as the other that a stolen animal was to be brought into the shop on that occasion, and its butchered carcass to be sold as meat; such a conclusion is the only reasonable inference to be drawn from the facts and circumstances in evidence and, in the opinion of the court, sustains the theory that the defendant was guilty of aiding and abetting in the larceny of this particular steer as charged in the information.

Other alleged errors are complained of. Matters are asserted to be prejudicial to this defendant in the brief without the citation of a single authority to support the same. Defendant was ably and energetically defended in the trial court by the same counsel who represent him in this court, and we are inclined to believe that, if authorities had existed to support the numerous contentions relied upon for a reversal, the same would have been cited in the brief. The crowded condition of the docket of this court makes it practically impossible for this court to search the books for authorities to support assertions of error made in behalf of the appellant. The burden is upon the appellant, not only to assert that error occurred in the trial, but to support such assertions by both argument and authority.

We have made a careful examination of the record and have considered all the errors assigned as grounds for reversing the judgment, and the conclusion is reached that the defendant received a fair trial and was rightfully convicted, and that none of the alleged errors are of sufficient

importance or so prejudicial as to authorize a reversal of the judgment of conviction.

It is therefore ordered that the judgment be affirmed.

DOYLE, P. J., and ARMSTRONG, J., concur.