## CARL GRIFFIN v. STATE.

No. A.-6988. Opinion Filed Jan. 31, 1930.
(287 Pac. 820.)

L. A. Wallace, for plaintiff in error.

Edwin Dabney, Atty. Gen., and Smith C. Matson, Asst. Atty. Gen., for the State.

CHAPPELL, J. The plaintiff in error, hereinafter called defendant, was convicted in the superior court of Okmulgee county of the crime of burglary in the second degree and sentenced to serve a term of three years' imprisonment in the state penitentiary.

The evidence of the state substantially established that: The defendant lived in the city of Henryetta. On the night of February 25, 1927, while J. R. Hopkins and his family were away from his residence, which is located in the city of Henryetta, the residence was broken into by some person picking the lock on the front door of the house. About 8:30 that evening, J. R. Hopkins' son returned to the home and noticed a light in the lower floor of the house. This light was turned out when he drove up, and Hopkins ran toward the front of the house to see if anybody would come out that way and then returned to the back of the house, and again to the front, and again to the rear. When he started back toward the front of the house the third time, two men darted from the house. Hopkins gave chase and caught this defendant about 150 feet from the house. A neighbor of Hopkins ran up and held the defendant until the police arrived and took him to jail. The only thing missing from Hopkins' house was a pistol, and this was later found in the home of the defendant.

The only defense interposed to the charge by this defendant is that he was so drunk on that occasion that he did not know what he was doing and that he has no recollection of having entered the home of Hopkins. At the time of his arrest, however, he had in his possession a flash-light and also a spatula with which he had evidently picked the lock on the front door of Hopkin's house. The pistol found in the defendant's home was identified as the pistol of Hopkins, and the younger Hopkins testified that the defendant was one of the men who ran from the house when he returned to his father's home.

The defendant first contends that the evidence is insufficient to sustain the conviction for the reason that the evidence as a whole showed the defendant to be in such a

state of intoxication as to render his mind incapable of forming a specific intent to commit the crime. There is some evidence tending to show that the defendant had been drinking that evening, but all the disinterested witnesses testified that he was not in such a state of intoxication as to render him irresponsible for his conduct or to prevent him from forming the illegal intent required as a basis for the commission of the crime.

Tom Hopkins testified:

"Q. What was his condition that night with reference to being drunk or sober? A. He seemed to be a normal man, in awful good fighting condition."

Jim Stormont, police chief:

"Q. What was the condition of this defendant with reference to being drunk or sober? A. Well, I could smell liquor on him.

"Q. He was pretty drunk, wasn"t he, Mr. Stormont? A. I wouldn't say he was drunk, he could handle himself pretty well."

C. W. Boots, deputy sheriff:

"Q. What was his condition as to being drunk or sober? A. Acted sober to me."

S. A. Hamil:

"Q. I will ask you to state, Mr. Hamil, from your observation of him, talking with him, that night, are you able to tell the jury whether he was intoxicated? A. Very little, if any, would be my observation.

"Q. Did he talk like a rational man? A. Yes, he talked like a rational man."

Defendant testifying in his own behalf said he was drunk and had no remembrance of the entrance into the home or how he got there. Witness Price, a codefendant,

testified that the defendant had been drinking that day. The question of whether the defendant was so drunk that he 'was incapable of forming the intent to commit the crime was one of fact for the jury. There is ample evidence to establish the fact that the defendant was sufficiently sober at least to know what he was doing and the evidence was therefore sufficient to support the verdict of the jury.

It is next contended that the trial court erred in the admission of certain incompetent, irrelevant, and immaterial evidence. The evidence complained of was brought out by the defendant on cross-examination of the witness Stormont, testifying for the state, in which the defendant elicited from such witness the fact that defendant loafed around "choc" joints and that he had been run out of town by the witness as chief of police. This court has repeatedly held that an appellant will not be permitted to profit by any alleged error which he or his counsel in the first instance invited by opening the question or by their own conduct. Defendant had called 'witnesses who testified to his good character, and when the witness Stormont was being cross-examined it appears that counsel was trying to discredit the witness by asking him to name a single time 'when he had arrested the defendant or when the defendant had done any act which indicated that he was a man of bad character. On redirect examination the court permitted the state to go into these matters in order that the witness might explain the reason why he believed the general reputation of this defendant as an upright and law-abiding citizen was 'bad. Counsel for defendant invited whatever error was occasioned by the admission of this alleged incompetent evidence and cannot profit by the same. Carter v. State, 6 Okla. Cr. 232, 118 Pac. 264; Boswell v. State, 8 Okla. Cr. 152, 126 Pac. 826; Klein v.

State, 15 Okla. Cr. 350, 176 Pac. 414; Davis v. State, 35 Okla. Cr. 156, 249 Pac. 164.

It is next contended that instruction No. 6 is erroneous.

Instruction No. 6 reads as follows:

"In this case, the defendant, Carl Griffin, does not deny he entered the home of the prosecuting witness, Hopkins, but says he was intoxicated to such an extent that he did not know what he was doing, or where he was, or anything that happened. In this connection, you are instructed that voluntary intoxication is no defense to the commission of crime, but where it appears that a defendant is in such a state of intoxication as to render the mind incapable of forming or entertaining the specific intent essential to constitute the offense charged, a verdict of not guilty should be returned. Whether or not such a state of intoxication existed is a question of fact for the jury. So, if you believe and find from the evidence in this case, that the defendant, Carl Griffin, was under the influence of intoxicating liquors, at the time of the offense alleged in the information, to such an extent that his mind was incapable of forming a specific intent to enter and burglarize the home of the prosecuting witness, and that he did not know what he was doing, and had no felonious intent to commit said crime, or if you have a reasonable doubt thereof, it will be your duty under the law, not to convict him for the crime of burglary, as alleged in the information."

It is contended that this instruction left the jury in doubt as to how to apply the clause, "and that he did not know what he was doing." The only evidence in the record to the effect that he did not know what he was doing was given by the defendant himself, and if the jury was misled by this instruction it was because the defendant himself had not made himself clear. The instruction was applicable to the defendant's testimony. While the in-

struction is not as skillfully drawn as it might have been, we apprehend that the jury did not have any difficulty in applying the law as contained in the instruction as to the defendant's theory of the case and to his testimony. The defendant admitted that he was in the home of Hopkins. The fact that he ran when the son returned to the home, the fact that a flash-light and spatula were found in defendant's possession, and the fact that a pistol taken from Hopkins' home was found in defendant's home shortly after the entering, together with the evidence of disinterested witnesses as to the defendant being sober and all the other facts and circumstances offered in evidence, are sufficient to support the verdict of the jury.

The errors of law complained of not being fundamental, the cause is affirmed.

EDWARDS, P. J., and DAVENPORT, J., concur.