Gus KIDDIE, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F–76–708.

Court of Criminal Appeals of Oklahoma.

Sept. 28, 1977.

Rehearing Denied Oct. 20, 1977.

---

Jesse L. Leeds, Muskogee, for appellant.

Larry Derryberry, Atty. Gen., Michael P. Kane, Asst. Atty. Gen., for appellee.

## OPINION

BRETT, Judge:

Appellant, Gus Kiddie, hereinafter referred to as defendant, was charged with the offense of False Claim for Insurance, in violation of 21 O.S.1971, § 1662, in the District Court, Muskogee County, Case No. CRF–75–246. He was tried and convicted by a jury on March 3, 1976. The jury recommended a punishment of three (3) years' imprisonment and a One Thousand ($1,000.00) Dollar fine. The court sentenced the defendant in accordance with the jury's recommendation. From this judgment and sentence, the defendant has perfected a timely appeal to this Court.

The evidence presented at trial may be summarized as follows. The State's first witness was William Charles Sears. He initially testified that he was acquainted with the defendant, and identified him in court. He testified that he visited the defendant at his home during the last week of March, 1975. In the course of their conversation, defendant asked the witness if he would like to make some money by defrauding insurance companies. As a result of the defendant's inquiry, Sears reported the defendant's statements to Officer Jay Clinton of the Muskogee Police Department. Clinton asked Sears to aid him in investigating the defendant's activities. About a week later Sears was introduced to David Deetz, who placed electronic equipment on his person for the purpose of recording conversations. Sears subsequently returned to the defendant's house where he had another conversation with the defendant regarding defrauding insurance companies. On this and subsequent trips to the defendant's house, the witness testified that he was equipped with a recording device and was accompanied by officers from the Muskogee Police Department and by David Deetz, who was stationed in the trunk of Sears' car.

The next day Sears again visited the defendant at his house. At this time defendant made an appointment for Sears with a doctor and told Sears that they were going to claim that the witness had slipped on some oil on the defendant's front porch, and then collect and split the insurance money. In May of 1975, the witness, accompanied by the police and with the recording device, returned to the defendant's house. During this meeting the defendant stated that they would make more money by staging a fall at a grocery store, and he specifically mentioned a Quik Trip store in Muskogee. The witness and the police again went to the defendant's house on May 20. On this occasion the defendant had the witness follow him to the Quik Trip store. They parked their cars next to the Quik Trip store, and the defendant inquired whether the witness had a quart of oil in his car. Sears replied that he did not. The defendant then procured a quart of oil from his own car and opened it. The defendant drove his car to the gasoline pump so as to block the view of the store attendant. He then gave the witness a dollar and instructed him to go to the store and buy some gasoline. When the witness got to the gasoline pumps the defendant pointed to some fresh oil on the

pavement, and according to the defendant's instructions the witness placed his foot in the oil and staged a fall, whereupon the defendant asked, "Are you hurt?" Sears then told the attendant in the store that he had fallen, and went to the hospital for the purpose of having some x-rays taken. As a result of this visit, Jim Carlile of the Aetna Casualty and Surety Company received a bill from the hospital. During this entire event, the witness Sears was equipped with a recording device and was being observed by members of the police department. The next day, according to Sears' testimony, the defendant informed him of another doctor's appointment which he had made for Sears. Sears later went to the doctor's office where he had more x-rays taken.

Sears also related that he had an appointment with Jim Carlile of the Aetna Casualty and Surety Company, and that previous to the appointment he went to the defendant's home where defendant demonstrated how Sears should describe his injuries to Carlile. Defendant suggested to Sears that he should not settle for less than $5,000.00. Sears also related yet another conversation he had with the defendant while the defendant was in a hospital. During this visit the defendant told Sears that he had taken a fake fall himself at a Git-N-Go store, and that his doctor had put him the hospital. The defendant asked Sears if he would witness for him. Finally, Sears stated that he and the defendant had agreed to split any money received from the insurance company as a result of their activities.

The State then called Howard Reeves, who was assigned to the tactical unit of the Muskogee Police Department. He testified that on May 20, 1975, he observed the defendant standing beside a gasoline pump in front of the Quik Trip store, making a pouring motion. He saw William Sears walk from the store and sit down on the pavement near where the defendant had made the pouring motion. The defendant then assisted Sears in getting up.

Charles Abeyta, an employee of the Quik Trip store on the day of the alleged event, testified that on May 20, 1975, a person came into the store, stating that he had slipped and fallen in the parking lot. Abeyta testified that the person who claimed to have fallen was William Sears, and he identified the defendant as the person who was with Sears.

The State then called James Carlile, who was employed by the Aetna Casualty and Surety Company as an insurance adjuster. He testified that his company carried the insurance for the Quik Trip store in Muskogee, and that he had set up a claim file concerning the incident at the Quik Trip store as previously related. He identified the plaintiff in the claim file as William Sears. He further testified that he had received some medical bills as a result of the alleged injury suffered by Sears.

Delores Dillard testified for the State that she was the officer manager for the Muskogee County Radiological Group. She testified that she submitted a claim for services rendered to William Sears for an injury he sustained on May 20, 1975. The bill was submitted as a claim to the Aetna Casualty and Surety Company.

Over objection, the State offered Mr. David Carpenter as a witness. He testified that he was employed at a Git-N-Go store in Muskogee, and that he was working there in July, 1975, when the defendant entered the store early in the morning, claiming to have slipped on some oil. Carpenter testified that upon further examination it was his opinion that the oil on which the defendant had slipped was fresh.

The State's next witness was David Deetz, an electronics technician who aided the Muskogee Police Department in the instant case. He related that on several occasions he equipped William Sears with a recording mechanism and accompanied him to the defendant's house in the trunk of Sears' automobile, where he recorded Sears' conversation with defendant. The tape recordings were admitted into evidence.

The defendant began his presentation of the evidence with the testimony of Ms. Grace Parks, Deputy Court Clerk for Muskogee County. Her testimony was in regards to a civil case in which defendant was

bringing action against three insurance companies to recover money for fire damage to one of his business buildings. At the conclusion of this testimony the civil file was introduced into evidence in accordance with the State's request.

The defendant then introduced Ms. Leona Beeba who was allowed to testify as a character witness for the defendant.

The defendant then took the stand for his own defense. He first testified that he was having difficulty collecting a claim from the Aetna Casualty and Surety Company for a fire loss sustained to his business building. He then testified that his first encounter with William Sears was ten to twelve years ago when he caught him stealing a watch at his laundry. His next meeting with Sears was when he appeared at his home wanting him to buy some "hot" government checks and securities. He testified that during this visit Sears offered to tell him who burned his business building if defendant would aid him in making some money by defrauding insurance companies. The defendant's testimony was materially in contrast to that of Sears in that the defendant asserted that it was Sears who initiated the scheme to defraud insurance companies. He testified that because of Sears' offer to give him information in relation to who caused the fire to his building, he agreed to witness Sears' fake fall in his attempt to acquire money from the insurance for his alleged injuries. He denied that he ever intended to accept any of the proceeds from Sears or to file any false claims with the insurance company. He further testified that on May 20 Sears approached him concerning their previously discussed arrangement, and they proceeded to the Quik Trip store. According to the defendant, Sears then asked the defendant if he would pour some oil on the cement close to the pumps. The witness testified that after he poured the oil Sears sat down in it and asked defendant to help him up, which he did. Defendant further denied ever encouraging Sears to go to the hospital or to a doctor, or to file an unfounded claim with an insurance company.

The defendant then called Roy Rogers as a witness, who testified as to the good character of the defendant. At the conclusion of his testimony, the defendant rested.

The defendant's first assignment of error is that "criminal acts are only those proscribed." This argument is based on the assertion that the evidence presented by the State at trial would not support a conviction under 21 O.S.1971, § 1662, because there was no showing that the defendant was the insured, that he filed a false claim, or that he submitted any proof of loss. The relevant statute, 21 O.S.1971, § 1662, provides that:

"Every person who presents or causes to be presented any false or fraudulent claim, or any proof in support of any such claim, upon any contract of insurance, for the payment of any loss, or who prepares, makes or subscribes any account, certificate, survey affidavit, proof of loss, or other book, paper or writing, with intent to present or use the same, or to allow it to be presented or used in support of any such claim, is punishable by imprisonment in the penitentiary not exceeding three years, or by a fine not exceeding one thousand dollars, or both."

The defendant claims that to sustain a conviction for his acts under this statute would require an extension or an interpretation of that Act, in violation of 21 O.S. 1971, § 2, which states that:

"No act or omission shall be deemed criminal or punishable except as prescribed or authorized by this code. . . ."

With reference to this statute, this Court has held that penal statutes may not be enlarged by implication or extended by inference to sustain a conviction unless the act is within the letter and spirit of the penal statute. *Biggs v. Watt*, 56 Okl.Cr. 306, 38 P.2d 587 (1934), and *McDonald v. State*, 54 Okl.Cr. 122, 15 P.2d 149 (1932). However, in interpreting a statute this Court has also stated that penal laws should be construed according to their reason and spirit and they should receive that liberal construction which will enable them to reach and destroy the evils at which they

are aimed. *Ex parte Barnett*, 96 Okl.Cr. 254, 252 P.2d 496 (1953), and *Hunter v. State*, 10 Okl.Cr. 119, 134 P. 1134 (1913). We have further held that in interpreting a statute this Court may look to each part of the statute, to the evils and mischiefs to be remedied, and to the natural or observed consequences of any particular interpretation. *Ex parte Barnett*, supra.

██ The defendant urges this Court to interpret 21 O.S.1971, § 1662, as requiring that there be privity or a contract existing between the accused and the insurance company in order for one who presented a false claim upon a policy of insurance to be amenable to prosecution. In applying the rules of construction discussed above, we are unable to adopt this interpretation which would take the defendant's acts in this case outside the meaning of 21 O.S. 1971, § 1662. Such an interpretation would be clearly ludicrous as it would not concur with the reason and the spirit of the statute, i. e., to arrest the shameful conduct of those who attempt to collect funds from insurance companies on fraudulent manufactured claims. Additionally, a reading of the statute reveals that it sanctions every person who presents or causes to be presented a false claim on any contract of insurance. It does not state that the claim must be filed on a contract of insurance between the accused and the insurance company.

██ The defendant also contends that the State failed to prove that a contract of insurance existed or that the defendant presented a false claim within the purview of the statute. The statute refers to "every person" who "presents a claim or causes to be presented any false or fraudulent claim" upon "any contract of insurance." In this case, a claim was obviously presented because it was firmly established that a loss notice was received by James Carlile on behalf of the insured, the Quik Trip Corporation. Medical bills were also received by the insurance company in this regard. There was also sufficient evidence for the jury to find that the defendant "caused" a claim to be presented. The evidence indicated that the defendant originated the scheme to defraud the insurance company and encouraged, directed and participated in the actions of Sears in that regard. It was also established that the defendant, while posing as William Sears, made a doctor's appointment for the examination of Sears, which bill was later presented to the insurance company. In light of the evidence presented in the case, it is apparent that the defendant's complicity and assistance in the presentation of a false claim to the insurance company is well within the purview of the provisions of 21 O.S.1971, § 1662.

██ As his second assignment of error, the defendant raises the defense of entrapment. It is his contention that the actions of William Sears, while acting as a decoy for the police, constituted entrapment, and his conviction should therefore be rendered void. Although it must be recognized that William Sears was the person who actually made the fake fall, who gave notice to the store manager, who went to the hospital complaining of his alleged injuries, and who discussed the claim with the insurance adjuster, this Court does not agree with the defendant that entrapment lies. According to the State's evidence, it was the defendant who initiated the crime by suggesting it to Sears. The defendant's propensity or willingness to commit the crime of insurance fraud was clearly shown by evidence that he supplied and poured the oil on the parking lot of the Quik Trip store, that he arranged for the doctor's appointment, and that he instructed Sears on the way he should describe his injuries to the insurance adjuster, and that he told Sears not to settle for under $5,000.00. There was also evidence that the defendant himself performed another fake fall at another business establishment after this particular incident.

It is clear from the record that not only did the defendant significantly participate in the scheme which brought him to trial in this case, but that he also possessed the propensity and the intent to defraud an insurance company.

■ The use of police decoys to detect or trap a person engaged in criminal activity has been firmly established by this state. We have often held that a decoy may be used to afford the criminal the opportunity to commit a crime, and the decoy may be apparently assisting in the commission of a crime without bringing the defense of entrapment effectively into play. *Riddle v. State*, Okl.Cr., 373 P.2d 832 (1962); *Beasley v. State*, Okl.Cr., 282 P.2d 249 (1955); *Rider v. State*, 53 Okl.Cr. 393, 12 P.2d 552 (1932). However, entrapment does apply when one is "instigated, induced or lured by an officer of the law or by other person, for the purpose of prosecution, into the commission of a crime which he had no intention of committing." *Beasley v. State*, supra. Additionally, if the "decoy suggests, initiates or induces the commission of the crime, or artificially propagates the crime or lures an otherwise innocent person to [aid and abet him]," then entrapment may apply and the conviction may not be upheld. *Finley v. State*, 84 Okl.Cr. 309, 181 P.2d 849 (1947). We therefore conclude the jury properly found that entrapment did not exist.

■ The third assignment of error advanced by the defendant is that the court erred in failing to give an "accomplice instruction," thereby requiring that the testimony of William Sears be corroborated. This contention is apparently premised on 22 O.S.1971, § 742, which states:

"A conviction cannot be had upon the testimony of an accomplice unless he be corroborated by such other evidence as tends to connect the defendant with the commission of the offense, and the corroboration is not sufficient if it merely show the commission of the offense or the circumstances thereof."

We cannot accept the defendant's contention that William Sears was an accomplice or that his testimony required corroboration. In reference to the rule of corroboration, this Court has held that the test of whether one is an accomplice is whether he could be indicted for the offense with which the defendant stands accused. *Howard v. State*, Okl.Cr., 561 P.2d 125 (1977). Apply-ing this test to the present case, it becomes apparent that William Sears was not an accomplice. He simply agreed to take part in the insurance fraud as a decoy for the police for the purpose of bringing the defendant to justice. Never at any time did Sears possess the criminal intent to defraud the insurance company. Because he had no criminal intent, he could not be indicted. A similar conclusion was attained in *Finley v. State*, supra, where the testimony of a police decoy was the basis for the prosecution of the defendant in a bribery charge. This Court there held that persons who disclose to the police that another has suggested the commission of a crime and who, under the direction of the police, act with the guilty party for the purpose of bringing the guilty to justice are not accomplices whose testimony must be corroborated because they lack criminal intent.

■ As his fourth assignment of error, the defendant objects to the introduction of a civil court file in which the defendant was the plaintiff and the Aetna Casualty and Surety Company was a defendant. The case revealed that the defendant brought action against the insurance company to recover the loss of his business building due to fire. The insurance company denied liability in this suit because of arson. The defendant had entered several documents from the file to demonstrate the possible cause for his present difficulties with Aetna. The State was then successful in entering the entire file into evidence, rather than allowing the defendant to place only selective parts of the file into evidence.

The defendant's contention that the introduction of the complete file was error is without merit because the record reflects a case of invited error. The State did not attempt to enter the file during its own case in chief, but only in response to the evidence introduced by the defendant. This Court has held that the defendant shall not be permitted to profit from any alleged error which the defense counsel in the first instance invited by opening the question or by their own conduct. *Pierce v. State*, Okl. Cr., 383 P.2d 699 (1963); *Griffin v. State*, 46 Okl.Cr. 146, 287 P. 820 (1930).

The defendant next contends as his fifth assignment of error that he was not given sufficient opportunity to present evidence of misconduct on the part of some jurors in his motion for new trial. The defendant complained that some jurors made statements about the defendant's past conduct which was not admitted into evidence at trial. Upon a review of the record, this Court observes that defense failed to present the evidence properly as his questions represented an attempt to elicit answers without proper foundation.

Furthermore, the alleged jury misconduct is based only upon the assertion that prejudice "might" have occurred. This Court has held in analogous cases that in order to be entitled to new trial due to alleged misconduct of jurors the defendant must show that there was actual prejudice against him or that he suffered an injustice. *Wagers v. State*, Okl.Cr., 370 P.2d 567 (1962); *Odell v. State*, 89 Okl.Cr. 184, 206 P.2d 229 (1949).

During the hearing for a new trial, it was developed that the defendant was aware of the jurors' possible prejudice against the defendant prior to the seating of the jurors. There was also evidence that one of the suspected jurors never offered any extrajudicial evidence. Thus, the defendant failed to meet his burden to show that the alleged misconduct was prejudicial.

The defendant's final assignment of error is that the trial judge committed reversible error by losing his neutrality and by reprimanding the defendant's counsel in such a way that it prejudiced the jury. According to the testimony of the defendant, taken at the hearing for a new trial, the judge stood up, was red in the face, appeared to be angry, and he shouted at the defense counsel to sit down. In *Ash v. State*, 93 Okl.Cr. 125, 225 P.2d 816 (1950), this Court held that:

"[W]hether or not the violation of this principle [prejudicial for the trial judge to reprimand counsel for defendant in the presence of the jury] by the trial judge in a particular case constitutes reversible error, depends upon the facts peculiar to that case.

"The important consideration, of course, is whether or not from a study of the record as a whole, it appears that such acts on the part of the trial court operated to the injury of the defendant. . . ." 225 P.2d at 819.

After carefully reviewing the record, this Court cannot find that the alleged misconduct on the part of the trial judge had such a significant prejudicial effect as to deprive the defendant of a fair trial. This Court observes that the incident complained of by the defendant occurred late in the trial, after all the evidence had been presented and both parties had rested their case. Additionally, the record reflects questioning of juror Woolard by the judge in which the juror stated that he did not hear or see the judge reprimand the defense counsel during the trial, and he further stated that he did not notice any evidence of bias or prejudice on the part of the judge. We further note that in *Garrett v. State*, 74 Okl.Cr. 78, 123 P.2d 283 (1942), cited by the defendant, the evidence against the defendant in that case was far from conclusive, thereby giving the prejudicial actions of the judge a more negative effect. In the instant case, however, the evidence was extensive and conclusive enough for the jury to decide the issue of innocence or guilt regardless of prejudice, if any, shown by the judge in the alleged instance. We find this assignment of error to be without merit.

For the reasons herein stated the judgment and sentence appealed from is, hereby, *AFFIRMED*.

BUSSEY, P. J., concurs.