Phillip DAVIDSON, Appellant,

v.

The STATE of Oklahoma, Appellee.

Nos. F–78–103 & F–78–104.

Court of Criminal Appeals of Oklahoma.

Dec. 15, 1980.

Rehearing Denied Jan. 15, 1981.

William J. Ervin, Baumert & Ervin, McAlester, for appellant.

Larry Derryberry, Atty. Gen., of Oklahoma, William S. Flanagan, Asst. Atty. Gen., for appellee.

## OPINION

W. O. GREEN, III, Special Judge:

The appellant, Phillip Davidson, was charged with Unlawful Delivery of Marihuana in Case No. CRF–76–182, and with Unlawful Possession of Marihuana With Intent to Distribute in Case No. CRF–76–181, both involving the same transaction. A Pittsburg County jury found him guilty as charged and recommended a five-year suspended sentence on each count. On September 8, 1977, the appellant was sentenced to five years in the penitentiary on each charge, four years to be suspended, with both sentences to run concurrently. The appellant appeals both convictions in a consolidated appeal with identical issues. This Court will issue a single opinion to cover both cases.

On August 10, 1976, while an inmate in the Pittsburg County Jail, Richard Martin was approached by an officer of the sheriff's office to arrange a purchase of marihuana from appellant in exchange for a possible release from jail and favorable treatment on pending charges. Martin contacted appellant by phone, asking him to bring Martin some marihuana on August 11, 1976. Appellant reportedly declined, but at Martin's insistence finally agreed. The appellant failed to appear at the appointed time and place. The next day, on August 12, 1976, Martin again contacted appellant by phone and renewed his request. Testimony at trial suggests appellant's reluctance but clearly establishes his final consent to consummate the sale. By prearrangement the appellant and Martin met at the home of Mrs. McKinney, Martin's grandmother, wherein law enforcement officers awaited their arrival. Upon prearranged signal, the officers entered the room where Martin and the appellant were found with a number of bags of marihuana and money on the bed. Appellant was arrested and the money and marihuana seized by the officers. During the arrest Martin told officers that appellant mentioned having more marihuana in the trunk of his automobile and, based upon the strength of Martin's statement, officers impounded the car, obtained a search warrant and searched the trunk, where additional marihuana was found.

█ In his first assignment of error, the appellant challenges the validity of his arrest and the subsequent seizure of marihuana. He contends the arrest occurring in the residence of May McKinney was unlawful because the police were where they had no right to be. Although there is some question as to whether the police had the con-

sent of Mary McKinney, owner of the residence, to enter the premises, the evidence is clear they were invited there by her grandson, Richard Martin, who if not a resident there himself was certainly "in and out."

In *Kirk v. State*, Okl.Cr., 561 P.2d 134 (1977) police responding to an inquiry about a possible disturbance entered defendant's premises without the owner's permission and made a lawful arrest based on what they observed. Certainly the protection of *Payton v. New York*, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980), requiring a warrant when entering one's house to arrest, absent exigent circumstances, does not apply because the premises herein is not the appellant's residence. He cannot be said to have an expectation of privacy when entering the home of another to distribute marihuana.

Appellant further challenges the search and seizure of marihuana from the automobile of the appellant, as seized by the officer at the residence of Mrs. McKinney. The auto was searched under authority of a search warrant obtained upon information supplied by Richard Martin. Having determined the arrest of the appellant valid, the seizure of marihuana in the residence and the additional marihuana taken under the search warrant is also admissible.

■ Appellant asserts in his second assignment of error that the court erred in overruling his motion to dismiss on grounds of entrapment. Cases establish that entrapment is a relatively limited defense. Its purpose is to avoid the criminal punishment for a defendant who has committed all the elements of a proscribed offense but was induced to commit them by the government. In *Sorrels v. United States*, 287 U.S. 435, 53 S.Ct. 210, 77 L.Ed. 413 (1932), Chief Justice Hughes established that the entrapment defense prohibits law enforcement officers from instigating a criminal act by persons "otherwise innocent" in order to lure them to its commission and to punish them. Thus the thrust of the entrapment defense was held to focus on the intent or predisposition of the defendant to commit the crime. Certainly *Kiddie v. State*, Okl.

Cr., 574 P.2d 1042 (1977), professes to protect one induced by an officer of the law for the purpose of prosecuting, who committed a crime which he had no intention of committing.

In the case at bar, we cannot find as a matter of law that the appellant was or was not predisposed to sell marihuana; therefore, the issue of predisposition was properly one for the jury.

■ The question, it would appear, is whether testimony of subsequent sales of marihuana within two months of the transaction, which is the basis for the information filed herein, is admissible as evidence as to the defendant's predisposition to commit the act alleged. I believe it is. To argue that *any* evidence after the alleged criminal act is inadmissible as to predisposition seems to contradict known principles of human psychology. For the defendant to profess wrongful inducement of an act he had no intention of committing on one date, might well be controverted by evidence that after arrest for that act he subsequently within sixty days without alleged inducement by an officer of the law commits the same act.

The problem is not the competency or relevancy of subsequent acts but our concern is as to whether their prejudicial effect outweighs their probative value. In the case at hand I believe it does not. As Justice Hughes said in *Sorrels*, if the defendant seeks acquittal by reason of entrapment he cannot complain of an appropriate and searching inquiry into his own conduct and predisposition as bearing upon that issue. Although fundamental fairness of the due process clause of the Fifth Amendment requires certain exclusionary rules of evidence, we must be extremely cautious in denying the trier of fact all competent and relevant evidence. Similar acts the defendant apparently voluntarily committed so soon after the crime alleged would support his predisposition to commit the crime charged and he must bear the possible prejudicial effect, having himself asserted the defense of entrapment.

Further, the testimony of Dean Edwards and Christy Edwards of a subsequent sale of marihuana as offered by the State in rebuttal is admissible on the grounds that they were proper rebuttal evidence as to question the credibility of the appellant. The jury was told by counsel for the appellant in his opening statement that the appellant would testify that he had personally used marihuana for a number of years. At page 159 of the transcript of the trial, defense counsel further says that the appellant "has never sold it nor distributed it to anyone." The appellant testified repeatedly that he never sold marihuana to anyone. He expressly denied selling marihuana to anyone at any time, except on this one occasion.

As set out in *Fosberry v. State*, Okl.Cr., 509 P.2d 911 (1973) where defendant was charged with sale of marihuana and not possession and defendant on cross-examination emphatically denied having any marihuana in his automobile that night, sheriff's testimony on rebuttal to effect of having found marihuana in defendant's automobile during subsequent arrest merely went to defendant's credibility as a witness and not to the admissibility of the evidence, whether illegally seized or not. Therefore, the Court finds no merit in appellant's argument.

In his concluding assignment of error, appellant asserts attorney for the State made certain statements and comments which were misstatements of the law, misleading and confusing to the jury, and appealed to their passion and prejudice. While the record reflects questionable remarks and comments of counsel, the instructions of the court are unchallenged and certainly the jury's verdict in recommending a complete suspension of the sentence in each case evidences no passion or prejudice. The record does not indicate remarks substantially affecting the jury's findings and the Court, therefore, sees no merit in this argument.

The judgment and sentence in each of the foregoing matters is AFFIRMED.

BUSSEY, J., concurs.

BRETT, J., dissents.

BRETT, Judge, dissenting.

It is necessary to detail the facts in this case, since I differ from the majority as to which facts are pertinent.

The appellant, Phillip Davidson, was charged with Unlawful Delivery of Marihuana in Case No. CRF–76–183, and with Unlawful Possession of Marihuana With Intent to Distribute in Case No. CRF–76–182, both involving the same transaction. A Pittsburg County jury found him guilty as charged and recommended a five-year suspended sentence on each count. On September 8, 1977, the appellant was sentenced to five years in the penitentiary on each charge: four years to be suspended with both sentences to run concurrently. The appellant appeals both convictions in a consolidated appeal with identical issues. This Court issues a single opinion to cover both cases.

The appellant sold twenty bags of marihuana to Richard Martin, a police informant, who instigated the transaction in exchange for an early release from jail and dismissal from other charges. Testimony revealed that Martin was a casual friend of the appellant—they had smoked marihuana together in the past.

Martin, who was in the Pittsburg County Jail, contacted the appellant by phone at the request of the county sheriff to arrange a marihuana sale. The informant testified that he called the appellant several times within the next three days seeking to purchase marihuana. During these three days (August 10 through 12, 1976) the appellant at first refused, but at Martin's insistence, later agreed. The transaction was to take place at a house owned by the informant's grandmother.

Testimony revealed also that the appellant did not appear for the first alleged meeting on August 11. Martin once again called the appellant to arrange a purchase for the next evening. The appellant agreed. The appellant testified that there

were four calls by the informant urging the marihuana sale before it actually transpired.

Several law enforcement officers hid in the home of the informant's grandmother awaiting the anticipated transaction. This scenario took place on the 11th of April, but the appellant apparently did not show up. It was repeated on the 12th of April, and when the appellant arrived, the trap was sprung. The informant lured the appellant into a back bedroom of the house where the appellant sold twenty baggies (ounces) of marihuana to the informant who passed one hundred fifty five dollars to the appellant that had been supplied to him for that purpose by the police. At a prearranged signal, police came in from the next room to make the arrest and seizure of the contraband. On the informant's information, police secured a search warrant and found additional marihuana in the appellant's automobile.

The appellant testified at trial that he smoked marihuana regularly and bought it on numerous occasions for his personal use. He denied ever having sold marihuana before the alleged entrapment. A quantity of marihuana large enough to support a charge of selling had never been found in the appellant's possession before the April 12, 1976, incident. The informant, who instigated the marihuana sale, testified that he had purchased marihuana from the appellant about a year before the arranged sale. The appellant testified to the contrary.

In addition to the twenty bags of marihuana confiscated in the sale to the informant, fifteen bags of additional marihuana were found in the subsequent search of the appellant's automobile. At trial the prosecution contended that the presence of the fifteen bags in the appellant's car proved predisposition to sell to someone in addition to the informant. The informant testified that he had requested only twenty bags, but the appellant claimed that it was part of the trap. He testified that the informant asked for at least twenty bags or anything over that amount, but then only brought enough money for part of the marihuana. The appellant claims that the police who orchestrated the trap knew the law of entrapment well and that they instructed the informant, as part of the scenario, to make sure some of the marihuana was still in the appellant's possession to establish predisposition.

The prosecution put on two rebuttal witnesses—Dean Edwards and his wife, Christie—who testified that they had purchased marihuana from the appellant more than a month *after* the transaction which is the subject of this appeal. This testimony was inadmissible. If a person is to be convicted it should be with evidence of the crime with which he is charged, and evidence of other crimes, unless otherwise covered by a specific exception, is not admissible. *Burks v. State*, Okl.Cr., 594 P.2d 771 (1979); *Atnip v. State*, Okl.Cr., 564 P.2d 660 (1977); *Smith v. State*, 5 Okl.Cr. 67, 113 P. 204 (1911). Admitting testimony concerning prior acts to establish predisposition is relevant, but *subsequent* acts cannot prove *pre* disposition. Thus, admitting the testimony of Dean and Christy Edwards was error.

Since conflicting testimony was offered at trial as to predisposition, the credibility of the informant versus that of the appellant was paramount in determining predisposition. By improperly admitting evidence of a subsequent alleged marihuana sale, the scales were tipped unfairly against the appellant. Testimony of an alleged subsequent sale prevented a valid determination of the issue.

This Court has followed the two-part subjective test for entrapment set fourth by the Supreme Court in *Sorrells v. United States*, 287 U.S. 435, 53 S.Ct. 210, 77 L.Ed. 413 (1932): (1) a government agent or informant must lure a defendant into commission of a crime; and if this condition is met, (2) the finder of fact must determine if the appellant was *pre* disposed to commit the offense. The focus of the subjective test is not on the conduct of law enforcement officials. The spotlight is on the *pre* disposition of the appellant.

The majority permits a subsequent act—completely independent of the alleged entrapment—to be introduced into evidence to aid the prosecution's attempt to establish that the appellant was *pre*disposed to commit the crime with which he was charged. We should not admit subsequent acts to establish *pre*disposition. The appellant's state of mind both before and at the instant of the alleged entrapment should be determinative as to whether or not he was an otherwise innocent party who was "instigated, induced or lured by an officer of the law or by another person, for the purpose of prosecution, into committing a crime which he had no intention of committing." *Kiddie v. State*, Okl.Cr., 574 P.2d 1042 (1977). The appellant's state of mind two months after the alleged entrapment is irrelevant, and introduction of such subsequent alleged criminal act is highly prejudicial, clouding the issue of *pre*disposition at or before the alleged entrapment.

I believe the testimony of Dean and Christie Edwards is inadmissible because it is evidence of other crimes. But assuming arguendo that such evidence is admitted to challenge the credibility of the appellant, a limiting instruction is in order, so as not to mislead the jury on the issue of predisposition. I would reverse and remand with instructions that a subsequent alleged criminal act cannot be used to establish predisposition of an appellant in an entrapment case.